# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CHARLES TALBERT | : | CIVIL ACTION |
|---|---|---|
| v. | : | NO. 18-5112 |
| CORRECTIONAL DENTAL ASSOCIATES, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                                   **June 27, 2019**

In the past few years, Philadelphia inmate Charles Talbert has sued state actors, including state prison officials, in this Court dozens of times. With no apparent income other than an infrequent nuisance settlement, he regularly obtains *pauper* status and *pro se* files suit after his frequent interactions with police, witnesses, prison officials, and prison medical professionals. Having reviewed dozens of his complaints, and having evaluated his oral presentations, we do not doubt he suffers from a variety of real and perceived illnesses. He obtains medical care in state prisons before he is released. But when he returns to state prison, he allegedly does not get the care he steadfastly believes he is entitled under the Eighth or Fourteenth Amendment and otherwise attributes almost all conduct by state prison officials or prison medical professionals to retaliation for his earlier dismissed lawsuits or grievances. He then sues more state actors and prison medical professionals. We now again face these types of allegations against the prison medical system, a doctor and a nurse in a Philadelphia prison which recently housed him. After careful study, we today again dismiss his claims as his challenges to medical decisions and wishes for better care do not do not state a constitutional claim.

I. **Allegations**[1]

During his pretrial detention in a Philadelphia prison, Charles Talbert continued to suffer from: "(A) oral infection, cavities, and required anesthetic oral surgery; (B) irritable bowel syndrome, chronic lower-back muscle spasms, high cholesterol and/or triglycerides; and (C) anxiety, depression, post traumatic stress, and insomnia."[2] Philadelphia contracts with a private entity to provide medical care to its inmates. Corizon Health, Inc. ("Corizon") provides medical care to inmates in Philadelphia prisons.[3] Mr. Talbert challenges the medical care Corizon and its employees provided during his nearly seven-month detention from September 2018 to April 2019.[4]

From September 29, 2018 to April 15, 2019, Mr. Talbert "filed numerous sick call request[s] to Corizon complaining about: (A) irritable bowel syndrome; and (B) chronic lower-back spasms."[5] As to his lower-back spasms, Mr. Talbert alleges Sigy George, a nurse practitioner, "deprived [Mr. Talbert] a prescription for Flexiril," a muscle relaxant, on various dates throughout October and November 2018.[6] On October 18 and November 6, Defendant Siddharth Sagreiya, a medical doctor, "deprived [Mr. Talbert] of a prescription for Flexeril muscle-relaxants."[7] On November 12, 2018, Dr. Sagreiya "finally prescribed [Mr. Talbert] Flexeril for his back."[8]

Mr. Talbert alleges similar conduct relating to his irritable bowel syndrome. On October 10, 2018, nurse Mr. George "only prescribed [Mr. Talbert] two (2) days worth [of] Immodium capsules, for his irritable bowel syndrome."[9] On November 12, 2018, Dr. Sagreiya "finally prescribed [Mr. Talbert] . . . Immodium for his chronic bowel movements."[10] Mr. Talbert "filed grievance forms against both George and Sagreiya for delaying and depriving him required care and treatment."[11]

Mr. Talbert also claims Dr. Sagreiya prescribed him asthma treatment "intend[ing] to worsen [his] abnormal heart condition, in retaliation [for him] exercising his right to sue him in a

prior lawsuit."[12] On October 18, 2018, Dr. Sagreiya discussed an EKG report with Mr. Talbert, "which demonstrated [Mr. Talbert] having an 'abnormal' heart condition."[13] But to treat Mr. Talbert's asthma, "[Dr.] Sagreiya prescribed . . . Xopenex HFA, a known inhaling device to physicians, that causes severe heart conditions, and/or, death."[14] Mr. Talbert alleges "[Dr.] Sagreiya intentionally and maliciously withheld this vital information from [him], knowing of his pre-diagnosed heart condition, and told [him] to take the Xopenex every six (6) hours."[15] Mr. Talbert used the inhaler "as prescribed and began to feel tightness in his chest," causing him to "read the 'Patient Information' pamphlet, which indicated why he was having such tightness."[16]

Mr. Talbert claims he had "an implied-in-law contract with all Defendants, where such contract had been created through the PDP 'Inmate Handbook.'"[17] Mr. Talbert describes the Inmate Handbook as promising the City will afford inmates treatment "comparable in quality to the care and treatment [he] received while not imprisoned."[18] Mr. Talbert also invokes Defendants' "Constitutional duty to provide [him] with timely, and adequate care and treatment, for his serious medical, dental, and behavior[al] health issues."[19]

Mr. Talbert alleges Dr. Sagreiya and Mr. George "breached an implied contract . . . as well as violated [his] Fourteenth Amendment right to timely and adequate medical care and treatment."[20] We liberally construe Mr. Talbert's complaint as bringing claims against Corizon, Dr. Sagreiya, and Mr. George, for deliberate indifference to a serious medical need and breach of contract. We also construe Mr. Talbert's complaint as alleging First Amendment retaliation by Dr. Sagreiya. We do not today address or opine on Mr. Talbert's various claims against other Defendants which are not the subject of this motion to dismiss.

3

## II. Analysis

Corizon, Dr. Sagreiya, and Mr. George move to dismiss Mr. Talbert's amended complaint.[21] We grant their motion in the accompanying Order.

Inmates have a constitutional right to adequate medical care.[22] "In order to state a Fourteenth Amendment claim of inadequate medical attention upon which relief may be granted, a plaintiff must allege that a defendant acted with deliberate indifference to his serious medical needs."[23]

### A. Mr. Talbert fails to plead a Corizon policy or custom.

Mr. Talbert claims all Defendants, including Corizon, "had a Constitutional duty to provide [him] with timely, and adequate care and treatment, for his serious medical, dental, and behavior[al] health issues."[24] Corizon argues Mr. Talbert has failed to allege a Corizon policymaker implemented a policy or custom in violation of the Constitution.[25]

"Corizon is a private corporation. It has a contract with the Philadelphia Prison System to provide healthcare for inmates."[26] "It is well-settled that Corizon cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability."[27] To survive a motion to dismiss, Mr. Talbert knows he must sufficiently plead the existence of "a relevant Corizon policy or custom, and that the policy caused the constitutional violation he alleges."[28]

We must dismiss section 1983 claims against a medical provider entity if the Plaintiff fails to allege either a policy or custom of a policymaker.[29] Mr. Talbert alleges various discrete acts of Corizon employees exercising medical judgment. These include, for example, Dr. Sagreiya and Nurse Practitioner George prescribing Mr. Talbert medications for his asthma, back, and bowels. We do not divine any allegations implicating a Corizon policy or practice. The only practice Mr.

4

Talbert describes is the prison's sick call process.[30] If anything, his allegation speaks to Corizon's maintenance of a procedure to respond to inmate needs and requests for medical treatment.

Judge Pappert confronted similarly deficient allegations of a Corizon policy or practice in *Brower v. Corizon Health Services, Inc.*[31] In *Brower*, a *pro se* inmate sued Corizon, the City of Philadelphia, a former prison commissioner, and a nurse practitioner, claiming they violated his Eighth Amendment right to adequate medical care by failing to provide requested medical items, including changed tubing "to prevent kidney or bladder infections."[32] Judge Pappert found the inmate "failed to allege the existence of any policy or custom which caused his injury," and explained:

> While his complaint alleges that both Corizon and the City failed to give him adequate medical care, nowhere does he allege that such failure resulted from the implementation of a policy or custom. Brower additionally fails to allege who the policymaker is for both Corizon and the City. In the absence of allegations supporting the existence of a policy or custom and identifying a policymaker, Brower's claims against Corizon and the City fail.[33]

Mr. Talbert similarly fails to name a Corizon policymaker or allege a policy or custom causing his alleged harm. We must therefore dismiss Corizon.

### B. Mr. Talbert fails to plead Dr. Sagreiya and Nurse Practicioner George's deliberate indifference to a serious medical need.

Dr. Sagreiya and Nurse Practitioner George move to dismiss the deliberate indifference claims against them.

We liberally construe Mr. Talbert's claims against Dr. Sagreiya and Nurse Practitioner George as alleging their deliberate indifference to a serious medical need. Our Court of Appeals requires an inmate plead "(1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious."[34] A prison official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

5

exists, and he must also draw the inference."[35] But allegations of "[n]egligence and malpractice do not constitute" deliberate indifference to medical needs.[36] Nor do prisoner disagreements with the medical's professional's judgment as to the proper course of treatment.[37]

"A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[38] A medical need may also be serious "if 'unnecessary and wanton infliction of pain[]' results as a consequence of denial or delay in the provision of adequate medical care."[39] Examples of deliberate indifference include "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; [] (3) prevents a prisoner from receiving needed or recommended medical treatment[;]" and (4) "persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'"[40]

### 1. We dismiss Mr. Talbert's deliberate indifference claim against Dr. Sagreiya.

Mr. Talbert alleges Dr. Sagreiya "violated [his] Fourteenth Amendment right to timely and adequate medical care and treatment."[41] Because Mr. Talbert is a pretrial detainee, we construe Mr. Talbert's complaint as alleging deliberate indifference to a serious medical need in violation of the Due Process Clause of the Fourteenth Amendment.[42] Dr. Sagreiya argues Mr. Talbert fails to plead a serious medical need and fails to plead Dr. Sagreiya possessed the requisite level of intent to be held liable for deliberate indifference.[43]

We are guided by multiple cases in which our Court of Appeals has examined district court dismissals of inmates' deliberate indifference claims. In *McGinnis v. Hammer*, the inmate complained of severe knee pain.[44] A physician's assistant promptly saw the inmate and prescribed Ibuprofen but did not physically examine the knee.[45] The inmate filed a grievance. The inmate

6

later told the same physician's assistant the Ibuprofen was not working. The physician's assistant "canceled the [prescription] without prescribing any other pain medication."[46] The inmate alleged the physician's assistant canceled the prescription in retaliation for filing a grievance and rendered inadequate medical care in failing to conduct a physical examination of his knee.[47] The district court found the inmate's disagreements about the course of action did not state a plausible claim for deliberate indifference. The court explained "[e]ven if [the physician assistant] could be considered negligent in assessing ligament strain instead of tendonitis, in failing to conduct a physical examination of Plaintiff's knee, in declining to order diagnostic tests, or in failing to initially provide ameliorative measures such as a knee brace, an ace wrap, or crutches, such malfeasance would be insufficient to state an Eighth Amendment violation."[48] Our Court of Appeals affirmed the judgment.[49]

In *Edwards v. Northampton County*, a pretrial detainee contracted an infection in his leg, allegedly resulting from an unclean cell.[50] The district court granted summary judgment for the prison officials and our Court of Appeals affirmed.[51] Addressing the pretrial detainee's deliberate indifference claim, our Court of Appeals found relevant the fact the inmate received "some medical treatment" and "the undisputed medical record shows that the medical defendants tailored Edwards' treatment to the symptoms he was displaying at the time, pursuant to their professional judgment."[52] Our Court of Appeals emphasized the pretrial detainee's mere disagreement over the adequacy of treatment does not rise to a deliberate indifference claim, as the inmate "offered no evidence from which a reasonable juror could conclude that the defendants intentionally refused to provide needed treatment, delayed necessary treatment for a non-medical reason, prevented Edwards from receiving needed or recommended treatment, or persisted in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'"[53]

7

Similarly, in *Bryant v. Kaskie*, our Court of Appeals affirmed the district court's dismissal of an inmate's deliberate indifference claim.[54] The inmate claimed the defendant nurse practitioner prescribed medication but failed to inform him about its known side effect, which caused him to develop gynecomastia.[55] Our Court of Appeals found the nurse practitioner's "alleged failure to inform [the inmate] of the potential side effects of Risperidone is insufficient to demonstrate deliberate indifference," because "[e]ven if this allegation could rise to the level of negligence, simple negligence cannot support an Eighth Amendment claim."[56]

Mr. Talbert alleges Dr. Sagreiya "deprived" him a Flexiril prescription on October 18 and November 6, 2018.[57] But on November 12, 2018, Dr. Sagreiya prescribed Mr. Talbert Flexeril and Immodium.[58] Guided by *McGinnis* and *Edwards*, we find Mr. Talbert fails to sufficiently allege deliberate indifference, as Dr. Sagreiya rendered medical attention and did not withhold treatment. While Mr. Talbert may not agree with the timeliness of Dr. Sagreiya's response, such disagreement about the doctor's chosen course of treatment (or even the doctor's negligence) is not enough to establish a deliberate indifference claim.

Mr. Talbert also alleges Dr. Sagreiya "withheld" the known side effects of the prescribed inhaler.[59] Mr. Talbert, however, also alleges he had access to the "Patient Information" pamphlet which informed him of the inhaler's possible side effects.[60] But even to the extent Mr. Talbert could show negligence, it is not enough. Our Court of Appeals in *Bryant* instructed a medical professional's failure to inform an inmate about a medication's potential side effect does not amount to deliberate indifference. This is particularly the case here, in which Mr. Talbert needed the medication due to his asthma. Because Mr. Talbert does not plead sufficient facts indicating Dr. Sagreiya acted with deliberately indifference to a serious medical need, we dismiss this claim.

8

## 2. We dismiss Mr. Talbert's deliberate indifference claim against Nurse Practitioner George.

Mr. Talbert alleges Mr. George "violated [his] Fourteenth Amendment right to timely and adequate medical care and treatment."[61] We construe his claim against Mr. George as alleging deliberate indifference to a serious medical need in violation of the Due Process Clause of the Fourteenth Amendment. Mr. George moves to dismiss arguing Mr. Talbert fails to plead a serious medical need and fails to plead Mr. George possessed the requisite level of intent to be held liable for deliberate indifference.[62]

Mr. Talbert alleges Mr. George "deprived [him] of a prescription for Flexeril muscle relaxants for [Mr. Talbert's] known chronic lower-back spasms" on various occasions.[63] Mr. Talbert also alleges Mr. George "only prescribed [him] two (2) days worth [of] Immodium capsules for his irritable bowel syndrome."[64] Both these allegations fail to rise to the level of deliberate indifference. As discussed above, a few weeks after Mr. Talbert last asked Mr. George for Flexeril, Dr. Sagreiya prescribed it.[65] Mr. Talbert also eventually received the Immodium he requested. Mr. Talbert does not allege facts indicating Mr. George intentionally or recklessly failed to prescribe Flexeril or Immodium to inflict pain or suffering. Mr. Talbert alleges Mr. George saw him on various occasions. He received frequent medical attention and eventually the medication he requested. Like in *Edwards* and *McGinnis*, this is not deliberate indifference.

While Mr. Talbert may disagree about the timeliness of Mr. George's response, Mr. George's failure to dispense medication as soon as Mr. Talbert requests it does not show deliberate indifference.

9

### B. We dismiss Mr. Talbert's retaliation claim against Dr. Sagreiya.

Mr. Talbert alleges Dr. Sagreiya gave him an inhaler "to worsen [his] abnormal heart condition in retaliation [for him] exercising his right to sue [Dr. Sagreiya] in a prior lawsuit."[66] We construe his claim as one for First Amendment retaliation.

"A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."[67] Causation can be shown through allegations of "(1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link."[68]

Mr. Talbert alleges Dr. Sagreiya retaliated against him for being named in a previous lawsuit. Even assuming Mr. Talbert satisfies the first and second elements of retaliation, he pleads no facts giving rise to a plausible inference of causation. Mr. Talbert does not allege details about the prior lawsuit.[69] "[T]he timing of the alleged retaliatory action must be suggestive of retaliatory motive."[70] We cannot infer a temporal connection between Mr. Talbert's constitutionally protected right to sue and Dr. Sagreiya's conduct.

### C. We dismiss Mr. Talbert's breach of contract claim.

Mr. Talbert alleges Dr. Sagreiya and Mr. George "breached an implied contract."[71] Dr. Sagreiya and Mr. George argue Mr. Talbert has not sufficiently alleged a contracted existed between him and the defendants.

"To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege three things: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages."[72] Courts applying Pennsylvania law

10

generally do not recognize handbooks as contracts absent a clear intent of the parties to give a handbook contractual effect.[73] This is especially true in the prison context, in which inmate cannot "'accept' an offer from the [State Correctional Institution]" or reach a "'meeting of the minds' upon the terms of the handbook."[74]

Judge Lenihan, in an opinion adopted by Judge Gibson, applied this principle in *Brightwell v. Lehman*.[75] In *Brightwell*, the inmate alleged the Department of Corrections defendants breached the Special Management Unit contract when they did not release him into general population upon completion of the Special Management Unit program; they instead transferred him to another facility.[76] The district court dismissed this claim finding the handbook did not constitute a contract.[77]

Mr. Talbert claims he had a contract with all defendants through the Inmate Handbook, but he fails to allege any contractual terms or language in which Defendants expressed an intent to be bound by the Inmate Handbook. Mr. Talbert therefore does not plausibly allege a state law breach of contract claim.

### III. Conclusion

We dismiss Mr. Talbert's claim against Corizon because he failed to allege a policymaker and a policy or custom. We dismiss Mr. Talbert's deliberate indifference to a serious medical need claim against Dr. Sagreiya and Mr. George because he did not allege sufficient facts showing either defendant intentionally denied him treatment and disagreeing with the type and adequacy of treatment is not enough to satisfy a deliberate indifference claim. We dismiss Mr. Talbert's retaliation claim against Dr. Sagreiya because he did not allege facts showing the alleged retaliation occurred in close proximity to the constitutional right to sue, but we allow Mr. Talbert

11

to opportunity to amend his complaint to plea such facts. We also dismiss Mr. Talbert's breach of contract claim against Dr. Sagreiya and Mr. George as an inmate handbook is not a contract.

---

[1] "Despite *Iqbal*'s heightened pleading requirements, the district court must be more flexible in its interpretation of pro se pleadings." *Boyer v. Mohring*, 994 F. Supp. 2d 649, 654 (E.D. Pa. 2014); *see Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011), *as amended* (Sept. 19, 2011) ("[W]hen presented with a *pro se* litigant, we 'have a special obligation to construe his complaint liberally.'" (quoting *United States v. Miller*, 197 F.3d 644, 648 (3d Cir.1999))).

[2] *Id.* at ¶ 15.

[3] *Id.* at ¶ 4.

[4] Mr. Talbert alleges he "was under the care of . . . Corizon . . . from approximately September 29, 2018, through April 15, 2019, with only an interval of approximately thirty (30) days." ECF Doc. No. 31 at ¶ 12. Although unclear, we construe this as describing Mr. Talbert's length of incarceration.

[5] *Id.* at ¶ 27.

[6] *Id.* at ¶ 28 ("On or about October 5, 8, 10, 23, and November 2, 2018, George deprived Plaintiff of a prescription for Flexiril muscle-relaxants for Plaintiff[']s known chronic lower-back spasms.").

[7] *Id.* at ¶ 30.

[8] *Id.* at ¶ 31.

[9] *Id.* at ¶ 29.

[10] *Id.* at ¶ 31.

[11] *Id.* at ¶ 32.

[12] *Id.* at ¶ 37.

12

[13] *Id.* at ¶ 33.

[14] *Id.* at ¶ 34.

[15] *Id.* at ¶ 35.

[16] *Id.* at ¶ 36.

[17] *Id.* at ¶ 13.

[18] *Id.*

[19] *Id.* at ¶ 14.

[20] ECF Doc. No. 31 at ¶ 44.

[21] ECF Doc. No. 35. When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[22] *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983) (holding the Due Process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner"); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (finding "[a]cts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" violate the Eighth Amendment right to be free from cruel and unusual punishment).

[23] *Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013).

[24] ECF Doc. No. 31 ¶ 14.

[25] *See* ECF Doc. No. 35 at 8–12.

[26] *Toro v. Nutter*, No. 13-7552, 2015 WL 4667670, at *3 (E.D. Pa. Aug. 6, 2015).

[27] *Lee v. Abellos*, No. 13-0486, 2014 WL 7271363, at *9 (E.D. Pa. Dec. 19, 2014).

[28] *Id.*

[29] *See, e.g., Winn v. Philadelphia Prison Systems*, No. 16-05275, 2017 WL 467632, at *3 (E.D. Pa. 2017) (dismissing inmate's *Monell* claim because "he has not identified a policy or custom of Correctional Care Solutions that would establish a basis to hold it liable"); *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 438–44 (E.D. Pa. 2015) (finding inmate failed to plead a policy or custom).

[30] ECF Doc. No. 31 at ¶ 27.

[31] No. 15-5039, 2016 WL 2346754, at *3 (E.D. Pa. May 4, 2016).

[32] *Id.* at *1.

[33] *Id.* at *3.

[34] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see Lenhart*, 528 F. App'x at 115.

[35] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[36] *Edwards v. Northampton Cty.*, 663 F. App'x 132, 137 (3d Cir. 2016); *see Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation.").

[37] *Spruill*, 372 F.3d at 235.

[38] *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation and internal quotation marks omitted).

[39] *Id.* (internal citation omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

[40] *Rouse*, 182 F.3d at 197 (quoting *White v. Napoleon*, 897 F.2d 103, 109–11 (3d Cir. 1990)). We are mindful courts originally applied this standard to alleged Eighth Amendment violations, but our Court of Appeals instructs this standard also governs a pretrial detainee's claims for inadequate medical treatment in violation of the Fourteenth Amendment. *See Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016).

[41] ECF Doc. No. 31 ¶ 44.

[42] *See Edwards*, 663 F. App'x at 135.

[43] ECF Doc. No. 35 at 12–15.

[44] *McGinnis v. Hammer*, No. 15-398, 2017 WL 4286420, at *1 (W.D. Pa. July 28, 2017), *report and recommendation adopted*, No. 15-398, 2017 WL 4236063 (W.D. Pa. Sept. 25, 2017), *aff'd*, 751 F. App'x 287 (3d Cir. 2018).

[45] *Id.*

[46] *Id.* at *3.

[47] *Id.*

[48] *Id.* at *9.

[49] *McGinnis v. Hammer*, 751 F. App'x 287 (3d Cir. 2018).

[50] *Edwards v. Northampton Cty.*, No. 12-5323, 2016 WL 7654661, at *1 (E.D. Pa. Apr. 29, 2016), *aff'd*, 663 F. App'x 132 (3d Cir. 2016).

[51] *Edwards v. Northampton Cty.*, 663 F. App'x 132, 137 (3d Cir. 2016).

[52] *Id.*

[53] *Id.* (quoting *Rouse*, 182 F.3d at 197).

[54] *Bryant v. Kaskie*, 744 F. App'x 39, 42 (3d Cir. 2018).

[55] *Id.* at 41.

[56] *Id.* at 42.

[57] ECF Doc. No. 31 ¶ 30.

[58] *Id.* at ¶ 31.

[59] *Id.* at ¶ 35.

[60] *Id.* at ¶ 36.

[61] *Id.* at ¶ 44.

[62] ECF Doc. No. 35 at 12–15.

[63] ECF Doc. No. 31 at ¶ 28.

[64] *Id.* at ¶ 29.

[65] *Id.* at ¶ 31.

[66] ECF Doc. No. 31 at ¶ 37.

[67] *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citation and internal quotation marks omitted).

[68] *DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010).

[69] *Id.* at ¶ 37.

[70] *Miskovitch v. Hostoffer*, 721 F. Supp. 2d 389, 396 (W.D. Pa. 2010).

[71] *Id.* at ¶ 44.

[72] *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 502 (E.D. Pa. 2008).

[73] *Tran v. State Sys. of Higher Educ.*, 986 A.2d 179, 183 (Comm. Ct. Pa. 2009) (discussing student handbook); *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214–15 (Pa. Super. 1997) (discussing employer handbook); *Sharp v. Whitman Council, Inc.*, No. 2007 WL 2874058, at *3 (E.D. Pa. Oct. 1, 2007).

[74] *Oatess v. Beard*, 576 A.2d 398, 400 (Pa. Super. Ct. 1990).

[75] *Brightwell v. Lehman*, No. 03-205, 2006 WL 931702 (W.D. Pa. Apr. 10, 2006).

[76] *Id.* at *2.

[77] *Id.* at *7.