# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CHARLES TALBERT | : | CIVIL ACTION |
|---|---|---|
| v. | : | NO. 18-5112 |
| CORRECTIONAL DENTAL ASSOCIATES, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.** September 16, 2019

Citizens incarcerated in state prison awaiting their criminal trial are entitled to medical care. The contracted medical professionals providing this care must do so consistent with the Eighth Amendment's prohibition on deliberate indifference to the prisoner's medical needs. A constitutional claim under the Eighth Amendment requires more than negligence. Disagreements over medical decisions and prescription protocols do not generally rise to the level of a constitutional claim. We today address a serial *pro se* litigant's latest challenge to medical care during one of his recent pre-trial detentions in a state prison. He challenges medical professionals' failure to provide him with Flexeril for back spasms, Imodium for bowel issues, and a special diet and advice to address his high cholesterol and high triglycerides. He fails to plead these medical decisions constitute deliberate indifference under the Eighth Amendment. As he is again *pro se*, we dismiss his complaint without prejudice to timely amending his complaint to allege facts of deliberate indifference against the medical professionals, including the as yet-unserved medical professionals named in his complaint if he can do so in good faith.

## I. *Pro se* alleged facts.[1]

While detained in a Philadelphia prison awaiting his criminal trial in state court, Charles Talbert suffered from: "(A) oral infection, cavities, and required anesthetic oral surgery; (B) irritable bowel syndrome, chronic lower-back muscle spasms, high cholesterol and/or triglycerides; and (C) anxiety, depression, post-traumatic stress, and insomnia."[2] The City of Philadelphia contracts with Corizon Health, Inc. to provide medical care to inmates in Philadelphia prisons.[3] Mr. Talbert challenges the medical care provided during his nearly seven-month detention from September 2018 to April 2019 by three groups of contracted medical care providers: (1) dental care provided by Correctional Dental Associates and its staff; (2) medical care provided by Corizon Health, Inc. and its staff; and, (3) mental health care provided by Mental Health Management and its staff.[4]

### *Allegations against Physician's Assistant Shellenberger.*

On March 1, 2019, physician's assistant Deborah Shellenberger "discontinued [Mr. Talbert's] Flexeril," a muscle relaxant, "and Imodium."[5] Ms. Shellenberger "informed [Mr. Talbert] of him having high cholesterol and high triglycerides" but did not provide Mr. Talbert with: "(A) information how to reduce these high levels[;] (B) medication to reduce these high levels[;] (C) a special diet to reduce these high levels."[6] Ms. Shellenberger's actions and conduct caused him: "(A) [f]oreseeable, untreated, excruciating pain and muscle spasms; (B) [f]oreseeable, untreated, accidents while sleep, causing feces to unknowingly, and uncontrollably, run down [his] legs while sleeping, and causing severe rashes and burns therefrom."[7] Ms. Shellenberger's conduct caused him "untreated high blood pressure, cholesterol, and/or triglycerides, putting [him] at a foreseeable risk of a stroke, heart attack, diabetes, and/or, death."[8]

*Allegations against Nurse Horne.*

From March 3, 2019 to March 21, 2019, licensed practical nurse Antiletta Horne "deprived [Mr. Talbert] of his Immodium [sic] . . . a Corizon physician" prescribed.[9]

*Allegations against Dr. Kalu.*

Corizon's Regional Medical Director Dr. Eke Kalu "failed to provide [Mr. Talbert] with adequate medical staff, and/or, a referral to be seen by adequate medical staff, for his serious medical conditions."[10] Dr. Kalu "was fully aware" of his "serious medical conditions, through the sick call request system, progress notes, as well as other medical records" and Dr. Kalu "turned a blind eye and condoned" Ms. Shellenberger's and Ms. Horne's actions.[11]

**II. Analysis.**

Dr. Kalu, Ms. Shellenberger, and Ms. Horne move to dismiss Mr. Talbert's amended complaint.[12] We grant their motion in an accompanying Order. As Mr. Talbert has not had the opportunity to amend consistent with a possible claim of deliberate indifference, we grant him leave to timely amend to plead deliberate indifference if he can do so in good faith.

**A. Mr. Talbert fails to plead Dr. Kalu, Physician's Assistant Shellenberger, and Nurse Horne's deliberate indifference to a serious medical need.**

Dr. Kalu, Physician's Assistant Shellenberger, and Nurse Horne move to dismiss Mr. Talbert's deliberate indifference claims against them. We liberally construe Mr. Talbert's *pro se* claims against Dr. Kalu, Ms. Shellenberger, and Ms. Horne as alleging their deliberate indifference to a serious medical need.

Our Court of Appeals requires an inmate plead "(1) . . . the defendants were deliberately indifferent to their medical needs and (2) . . . those needs were serious."[13] Inmates have a constitutional right to adequate medical care.[14] "In order to state a Fourteenth Amendment claim of inadequate medical attention upon which relief may be granted, a plaintiff must allege . . . a

3

defendant acted with deliberate indifference to his serious medical needs."[15] A prison official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn . . . a substantial risk of serious harm exists, and he must also draw the inference."[16] But allegations of "[n]egligence and malpractice do not constitute" deliberate indifference to medical needs.[17]

"A medical need is serious . . . if it is one . . . has been diagnosed by a physician as requiring treatment or one . . . so obvious . . . a lay person would easily recognize the necessity for a doctor's attention."[18] A medical need may also be serious "if 'unnecessary and wanton infliction of pain[]' results as a consequence of denial or delay in the provision of adequate medical care."[19] Examples of deliberate indifference include "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; [] (3) prevents a prisoner from receiving needed or recommended medical treatment[;]" and (4) "persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'"[20]

### 1. We dismiss Mr. Talbert's deliberate indifference claim against Dr. Kalu.

Mr. Talbert alleges Dr. Kalu, Corizon's regional medical director, "failed to provide [him] with adequate medical staff, and/or, a referral to be seen by adequate medical staff . . . ."[21] Because Mr. Talbert is a pretrial detainee, we construe Mr. Talbert's complaint as alleging deliberate indifference to a serious medical need in violation of the Due Process Clause of the Fourteenth Amendment.[22] Dr. Kalua argues Mr. Talbert fails to plead a serious medical need and fails to plead Dr. Kalu possessed the requisite level of intent to be held liable for deliberate indifference.[23]

We are guided by multiple cases in which our Court of Appeals examined district court dismissals of inmates' deliberate indifference claims. In *McGinnis v. Hammer*, the inmate

4

complained of severe knee pain.[24] A physician's assistant promptly saw the inmate and prescribed Ibuprofen but did not physically examine the knee.[25] The inmate filed a grievance. The inmate later told the same physician's assistant the Ibuprofen was not working. The physician's assistant "canceled the [prescription] without prescribing any other pain medication."[26] The inmate alleged the physician's assistant canceled the prescription in retaliation for filing a grievance and rendered inadequate medical care in failing to conduct a physical examination of his knee.[27] The district court found the inmate's disagreements about the course of action did not state a plausible claim for deliberate indifference. The court explained "[e]ven if [the physician assistant] could be considered negligent in assessing ligament strain instead of tendonitis, in failing to conduct a physical examination of Plaintiff's knee, in declining to order diagnostic tests, or in failing to initially provide ameliorative measures such as a knee brace, an ace wrap, or crutches, such malfeasance would be insufficient to state an Eighth Amendment violation."[28] Our Court of Appeals affirmed the district court's judgment.[29]

In *Edwards v. Northampton County*, a pretrial detainee contracted an infection in his leg, allegedly resulting from an unclean cell.[30] The district court granted summary judgment for the prison officials and our Court of Appeals affirmed.[31] Addressing the pretrial detainee's deliberate indifference claim, our Court of Appeals found relevant the fact the inmate received "some medical treatment" and "the undisputed medical record shows . . . the medical defendants tailored Edwards' treatment to the symptoms he was displaying at the time, pursuant to their professional judgment."[32] Our Court of Appeals emphasized the pretrial detainee's mere disagreement over the adequacy of treatment does not rise to a deliberate indifference claim, as the inmate "offered no evidence from which a reasonable juror could conclude . . . the defendants intentionally refused to provide needed treatment, delayed necessary treatment for a non-medical reason, prevented

5

Edwards from receiving needed or recommended treatment, or persisted in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'"[33]

Similarly, in *Bryant v. Kaskie*, our Court of Appeals affirmed the district court's dismissal of an inmate's deliberate indifference claim.[34] The inmate claimed the defendant nurse practitioner prescribed medication but failed to inform him about its known side effect, which caused him to develop gynecomastia.[35] Our Court of Appeals found the nurse practitioner's "alleged failure to inform [the inmate] of the potential side effects of Risperidone is insufficient to demonstrate deliberate indifference," because "[e]ven if this allegation could rise to the level of negligence, simple negligence cannot support an Eighth Amendment claim."[36]

Mr. Talbert alleges Dr. Kalu failed to provide him with "adequate medical staff."[37] But Mr. Talbert acknowledges treatment and medical care from several health care providers: (1) Dr. Sagreiya,[38] (2) Nurse Practitioner George,[39] (3) Physician's Assistant Shellenberger,[40] (4) Dr. M. Hague,[41] and (5) Nurse Horne.[42] Guided by *McGinnis* and *Edwards*, we find Mr. Talbert fails to sufficiently allege deliberate indifference, as Mr. Talbert received treatment from two medical doctors, a physician's assistant, a nurse practitioner, and a licensed practical nurse. Dr. Kalu did not withhold adequate medical staff from Mr. Talbert. While Mr. Talbert may not agree with the treatment his medical team provided or the number of staff assigned to his treatment plan, his disagreement about his doctor's chosen course of treatment (or even his doctor's negligence) does not plead the deliberate indifference necessary to proceed into discovery.

Mr. Talbert also alleges Dr. Kalu "was fully aware of [his] serious medical conditions" but "turned a blind eye" to the conduct of Dr. Sagreiya, Dr. Hague, Physician's Assistant Shellenberger, Nurse Horne, and Mr. George.[43] Because Mr. Talbert does not plead sufficient

6

facts indicating Dr. Kalu acted with deliberate indifference to a serious medical need, we dismiss this claim.[44]

### 2. We dismiss Mr. Talbert's deliberate indifference claim against Physician's Assistant Shellenberger.

Mr. Talbert alleges Physician's Assistant Shellenberger "violated [his] Fourteenth Amendment right to timely and adequate medical care and treatment."[45] We liberally construe his *pro se* claim against her as alleging deliberate indifference to a serious medical need in violation of the Due Process Clause of the Fourteenth Amendment. Ms. Shellenberger moves to dismiss arguing Mr. Talbert fails to plead a serious medical need and fails to plead she possessed the requisite level of intent to be held liable for deliberate indifference.[46]

Mr. Talbert alleges on March 1, 2019, Ms. Shellenberger "discontinued [his] Flexeril, and Immodium [sic], without medical justification."[47] Mr. Talbert also alleges Ms. Shellenberger informed him he has high cholesterol and high triglycerides but "deprived [him]: (A) information how to reduce those high levels[;] (B) medication to reduce those high levels[;] (C) a special diet to reduce these high levels."[48] Both allegations fail to rise to the level of deliberate indifference. Mr. Talbert does not allege facts indicating Ms. Shellenberger intentionally or recklessly discontinued his prescriptions to inflict pain or suffering. He received frequent medical attention.[49] Like in *Edwards* and *McGinnis*, this is not deliberate indifference.

While Mr. Talbert may disagree about Physician Assistant Shellenberger's decision to discontinue his Flexeril and Imodium prescriptions, and her course of treatment regarding his high cholesterol and triglycerides, he does not allege facts of Physician Assistant Shellenberger intentionally or recklessly discontinuing his prescriptions or failing to treat his medical conditions.[50]

7

### 3. We dismiss Mr. Talbert's deliberate indifference claim against Nurse Horne.

Mr. Talbert alleges Nurse Horne "violated [his] Fourteenth Amendment right to timely and adequate medical care and treatment."[51] We liberally construe his *pro se* claim against Ms. Horne as alleging deliberate indifference to a serious medical need in violation of the Due Process Clause of the Fourteenth Amendment. Ms. Horne moves to dismiss arguing Mr. Talbert fails to plead a serious medical need and fails to plead Ms. Horne possessed the requisite level of intent to be held liable for deliberate indifference.[52]

Mr. Talbert alleges Ms. Horne "deprived [him] of his Immodium [sic] . . . a Corizon physician had ordered him, intentionally, and maliciously."[53] His allegation fails to rise to the level of deliberate indifference. Mr. Talbert does not allege facts indicating Ms. Horne intentionally or recklessly failed to deliver his Imodium to inflict pain or suffering. Mr. Talbert received frequent medical attention from numerous care providers.[54] This is not deliberate indifference.

### B. Mr. Talbert's present allegations are distinguishable from his allegations in *Talbert v. Correctional Dental Associates*.[55]

We are aware of our Court of Appeals' decision in *Talbert v. Correctional Dental Associates*,[56] and find Mr. Talbert's present allegations distinguishable. Mr. Talbert's earlier case counsels in favor of dismissing this pleading.

In *Correctional Dental Associates*, Mr. Talbert alleged medical staff's deliberate indifference when refusing Mr. Talbert's request to go off site for a tooth extraction.[57] Our Court of Appeals emphasized Mr. Talbert's alleged "crippling fear of needles in his mouth" could constitute a serious medical need, and "when a medical professional fails 'to consider an individual inmate's condition in making treatment decisions ... [. . . is] precisely the kind of conduct . . . constitutes a substantial departure from accepted professional judgment, practice, or standards

8

[such] as to demonstrate . . . the person responsible actually did not base the decision on such a judgment.'"[58] For example, a nurse told Mr. Talbert his fear of needles is "not a medical condition."[59] Our Court of Appeals noted "if Talbert's fear was an objective medical need, or an actual phobia, it should have been factored into the treatment plan."[60]

Those specifically articulated concerns are not plead in Mr. Talbert's present complaint regarding prison medical care. Mr. Talbert neither alleges Dr. Kalu, Ms. Shellenberger, and Ms. Horne failed to consider an individual condition when developing his treatment plan, nor his treatment plan failed to employ "professional judgment."[61]

### III. Conclusion.

We dismiss Mr. Talbert's deliberate indifference to a serious medical need claim against Dr. Kalu, Ms. Shellenberger, and Ms. Horne because he did not allege sufficient facts these medical professionals intentionally denied him treatment.

---

[1] "Despite *Iqbal*'s heightened pleading requirements, the district court must be more flexible in its interpretation of *pro se* pleadings." *Boyer v. Mohring*, 994 F. Supp. 2d 649, 654 (E.D. Pa. 2014); *see Higgs v. Attorney General of the United States*, 655 F. 3d 333, 339 (3d Cir. 2011), *as amended* (Sept. 19, 2011) ("[W]hen presented with a *pro se* litigant, we 'have a special obligation to construe his complaint liberally.'" (quoting *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999))).

[2] ECF Doc. No. 31 at ¶ 15.

[3] *Id.* at ¶ 4.

[4] Mr. Talbert alleges being "under the care of Defendants, CDA [Correctional Dental Associates], Corizon and MHM [Mental Health Management] from approximately September 29, 2018, through April 15, 2019, with only an interval of approximately thirty (30) days." *Id.* at ¶ 12.

We dismissed Mr. Talbert's claims against Corizon, Dr. Sagreiya, and Mr. George with prejudice. *See* ECF Doc. No. 48. We now address new claims Mr. Talbert pleads against Eke Kalu, MD; Deborah Shellenberger, PA; and Antiletta Horne, LPN. *See* ECF Doc. No. 31 at ¶¶ 39-46. Mr. Talbert has yet to serve the remaining named medical professionals, with leave granted him in our September 11, 2019, Order to identify their correct addresses for the U.S. Marshal Service. ECF Doc. No. 64.

9

⁵ ECF Doc. No. 31 at ¶ 39.

⁶ *Id.* at ¶ 40.

⁷ *Id.* at ¶ 42.

⁸ *Id.* at ¶ 43.

⁹ *Id.* at ¶ 41.

¹⁰ *Id.* at ¶ 45.

¹¹ *Id.* at ¶ 46.

¹² ECF Doc. No. 59. When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as reasonable inferences . . . can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief . . . is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content . . . allows the court to draw the reasonable inference . . . the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations . . ., 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[W]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

¹³ *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

¹⁴ *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983) (holding the Due Process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner"); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (finding "[a]cts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" violate the Eighth Amendment right to be free from cruel and unusual punishment).

¹⁵ *Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013).

¹⁶ *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

¹⁷ *Edwards v. Northampton County*, 663 F. App'x 132, 137 (3d Cir. 2016); *see Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation.").

10

[18] *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citations and internal quotation marks omitted).

[19] *Id.* (internal citation omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

[20] *Rouse*, 182 F.3d at 197 (quoting *White v. Napoleon*, 897 F.2d 103, 109-11 (3d Cir. 1990)). We are mindful courts originally applied this standard to alleged Eighth Amendment violations, but our Court of Appeals instructs this standard also governs a pretrial detainee's claims for inadequate medical treatment in violation of the Fourteenth Amendment. *See Edwards*, 663 F. App'x at 135.

[21] ECF Doc. No. 31 at ¶ 45.

[22] *See Edwards*, 663 F. App'x at 135.

[23] ECF Doc. No. 59 at 9-11.

[24] *McGinnis v. Hammer*, No. 15-398, 2017 WL 4286420, at *1 (W.D. Pa. July 28, 2017), *report and recommendation adopted*, No. 15-398, 2017 WL 4236063 (W.D. Pa. Sept. 25, 2017), *aff'd*, 751 F. App'x 287 (3d Cir. 2018).

[25] *Id.*

[26] *Id.* at *3.

[27] *Id.*

[28] *Id.* at *9.

[29] *McGinnis v. Hammer*, 751 F. App'x 287 (3d Cir. 2018).

[30] *Edwards v. Northampton County*, No. 12-5323, 2016 WL 7654661, at *1 (E.D. Pa. Apr. 29, 2016), *aff'd*, 663 F. App'x 132 (3d Cir. 2016).

[31] *Edwards v. Northampton County*, 663 F. App'x 132, 137 (3d Cir. 2016).

[32] *Id.*

[33] *Id.* (quoting *Rouse*, 182 F.3d at 197).

[34] *Bryant v. Kaskie*, 744 F. App'x 39, 42 (3d Cir. 2018).

[35] *Id.* at 41.

[36] *Id.* at 42.

[37] ECF Doc. No. 31 at ¶ 45.

[38] *Id.* at ¶¶ 30-35, 37, 42, 44.

[39] *Id.* at ¶¶ 28-29, 32, 42, 44.

[40] *Id.* at ¶¶ 39-40, 42-44.

[41] *Id.* at ¶ 38.

[42] *Id.* at ¶¶ 41-42, 44.

[43] *Id.* at ¶ 46.

[44] To the extent Mr. Talbert's allegations may be construed as a *respondeat superior* claim—Dr. Kalu serves as Corizon's regional medical director and Mr. Talbert does not allege Dr. Kalu was present in the prison or treated him—he cannot rely solely on *respondeat superior* as a theory of liability in a 42 U.S.C. § 1983 claim. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Knox v. Secretary Department of Corrections*, 669 F. App'x 611, 612 (3d Cir. 2016) (Per Curiam) (Plaintiff "must show . . . the defendants were personally involved in his medical treatment by alleging personal direction, actual knowledge, or acquiescence."). Mr. Talbert does not allege Dr. Kalu personally directed his medical treatment or had actual knowledge of his medical treatment. *See* ECF Doc. No. 31 at ¶¶ 45-46; *see also Chavarriaga v. New Jersey Department of Corrections*, 806 F.3d 210, 222 (3d Cir. 2015) ("Although a court can infer . . . a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."). Mr. Talbert alleges Dr. Kalu "condoned the aforementioned acts and inactions" of certain medical staff. *See* ECF Doc. No. 31 at ¶ 46. But "a plaintiff 'must portray specific conduct by state officials which violates some constitutional right.'" *Chavarriaga*, 806 F.3d at 222 (quoting *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970)). Mr. Talbert does not allege specific conduct by Dr. Kalu besides condoning the acts of medical staff. Because Mr. Talbert fails to plead Dr. Kalu personally directed his treatment, had actual knowledge of his treatment, or acquiesced to his treatment, he cannot state a *respondeat superior* claim against Dr. Kalu.

[45] ECF Doc. No. 31 at ¶ 44.

[46] *Id.* at ¶ 12-15.

[47] *Id.* at ¶ 38.

[48] *Id.* at ¶ 40.

[49] *See* ECF Doc. No. 31 at ¶¶ 30-35, 37, 42, 44 (Mr. Talbert alleging treatment by Dr. Sagreiya); ¶¶ 28-29, 32, 42, 44 (Mr. Talbert alleging treatment by Nurse George); ¶¶ 39-40, 42-44 (Mr. Talbert alleging treatment by PA Shellenberger); ¶ 38 (Mr. Talbert alleging treatment by Dr. Hague); and ¶¶ 41-42, 44 (Mr. Talbert alleging treatment by Nurse Horne).

⁵⁰ Several courts of appeals have evaluated similar high cholesterol-related deliberate indifference claims. *See, e.g., O'Brien v. Said*, 754 F. App'x 616 (9th Cir. 2019) (Mem.) (Remanded deliberate indifference claim against doctor where inmate alleged "Dr. El Said knew of O'Brien's high cholesterol, failed to provide treatment, further failed to inform O'Brien regarding his condition, and . . . O'Brien suffered harm as a result."); *McDonald v. Hardy*, 821 F.3d 882, 889-92 (7th Cir. 2016) (Reviewing a granted motion for summary judgment and concluding a jury could find a warden's decision to cancel a prescribed low-cholesterol diet could constitute deliberate indifference); *Baez v. Rogers*, 522 F. App'x 819, 820-21 (11th Cir. 2013) (per curiam) (Affirming a granted motion to dismiss and concluding inmate did not allege a current cholesterol problem mandating continued treatment); *Cody v. CBM Correctional Food Services*, 250 F. App'x 763, 765 (8th Cir. 2007) (per curiam) (Affirming a granted motion for summary judgment and concluding inmate "presented no evidence of an immediate danger to his health or . . . his health suffered" due to a failure to provide a low-cholesterol diet).

Mr. Talbert does not allege he suffered harm from Ms. Shellenberger's failure to provide him information, treatment, and a specialized diet. He also does not allege Ms. Shellenberger interfered with a prescribed course of treatment for his high cholesterol. He pleads Ms. Shellenberger informed him of his high cholesterol. Mr. Talbert's claim is similar to those plead in *Cody* and *Baez* and distinguishable from those plead in *O'Brien* and *McDonald*.

⁵¹ *Id.* at ¶ 44.

⁵² ECF Doc. No. 59 at ¶¶ 9-11.

⁵³ ECF Doc. No. 31 at ¶ 41.

⁵⁴ *See* ECF Doc. No. 31 at ¶¶ 30-35, 37, 42, 44 (Mr. Talbert alleging treatment by Dr. Sagreiya); ¶¶ 28-29, 32, 42, 44 (Mr. Talbert alleging treatment by Nurse George); ¶¶ 39-40, 42-44 (Mr. Talbert alleging treatment by PA Shellenberger); ¶ 38 (Mr. Talbert alleging treatment by Dr. Hague); and ¶¶ 41-42, 44 (Mr. Talbert alleging treatment by Nurse Horne).

⁵⁵ 731 F. App'x 145 (3d Cir. 2018) (Per Curiam).

⁵⁶ *Id.*

⁵⁷ *See id.* at 150.

⁵⁸ *Id.* at 150-51 (quoting *Roe v. Elyea*, 631 F.3d 843, 860 (7th Cir. 2011)).

⁵⁹ *Id.* at 151.

⁶⁰ *Id.*

⁶¹ *Id.*