# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CHARLES TALBERT | : | CIVIL ACTION |
|---|---|---|
| v. | : | NO. 18-5112 |
| CORRECTIONAL DENTAL ASSOCIATES, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                **November 29, 2019**

      Continuing to challenge prison medical professionals' judgments as to his medical care, state prison inmate Charles Talbert now seeks a mandatory preliminary injunction compelling a prison psychiatrist to prescribe the addictive Xanax as his favored anti-depressant as he does do as well on the prescribed anti-depressant non-addictive medication available in prison. The prison psychiatrist allegedly declines to prescribe the highly addictive Xanax given prison safety and administration concerns with its distribution among prisoners. The prison psychiatrist will respond to Mr. Talbert's "final amended complaint" next month. But, after a year of filing amended pleadings, Mr. Talbert wants the Xanax now. As our Court of Appeals recently reminded us in *Victory v. Berks County*, we may enter mandatory injunctive relief ordering prison officers to change their prison decisions only in the most unusual cases where the movant's right to relief is "indisputably clear."[1] Given this higher standard, Mr. Talbert fails to show a right to Xanax as opposed to another anti-depressant is indisputably clear or to show imminent irreparable harm caused by the prison medical decision to prescribe a Xanax alternative. We deny Mr. Talbert's motion for a mandatory injunction directing a prison doctor to prescribe Mr. Talbert's favored Xanax.

I.   *Pro se* **allegations seeking to obtain mandatory injunctive relief.**

Charles Talbert suffers post-traumatic stress disorder, anxiety and insomnia, for which psychiatrists have prescribed him Xanax.[2] Mr. Talbert continued to suffer these illnesses while a pretrial detainee in a Philadelphia prison between September 2018 and September 2019.[3] Mr. Talbert's illnesses cause him "suicidal-homicidal thoughts; thoughts of past trauma; panic attacks on the regular; and [to be] up all night without sleep."[4] Mr. Talbert feels unsafe in large crowds, he is "mentally tortured" and "[s]hould he continue this lifestyle, something tragic is bound to happen."[5]

Drs. Reynolds, Taylor and Fowler, licensed psychiatrists employed by the Philadelphia Department of Prisons, knew about Mr. Talbert's history of mental illness and past Xanax prescriptions because psychiatrists prescribed him Xanax "in the community."[6] These prison psychiatrists deprived him Xanax for over a year because it is a highly addictive and costly controlled substance which is commonly sold among prison inmates.[7] Without Mr. Talbert's consent, on October 18, 2018, Dr. Reynolds prescribed Pamelor, an alternative anti-depressant.[8] Prison psychiatrists did not inform Mr. Talbert about differences between the medications, and Mr. Talbert mistakenly took Pamelor for two weeks.[9] After those two weeks, Mr. Talbert received an electrocardiogram indicating an "abnormal heart condition," and the prison doctors stopped Pamelor.[10] When Mr. Talbert asked Dr. Fowler which psychiatrist prescribed him Pamelor, Dr. Fowler would not answer and tried to "cover up [Dr.] Reynolds' acts and/or omissions."[11]

Drs. Taylor and Reynolds prescribed Buspirone as a second Xanax alternative.[12] Mr. Talbert claims Buspirone does not help him because when he took it previously, "it did nothing but make him feel weird and not himself. The symptoms of [post-traumatic stress disorder]" remained.[13] Mr. Talbert does not allege he even tried this alternative prescribed by the doctors.

2

Without access to Xanax, Mr. Talbert struggles to fall asleep and suffers several anxiety attacks.[14] Mr. Talbert claims he "is up all day and all through the night, with visions of him being shot all over again; or him killing the inmate that snuck him from behind once he finds him on the street."[15] Mr. Talbert claims "[w]ithout Xanax, [he] will continue to be mentally tortured while [incarcerated]."[16]

Mr. Talbert sued Drs. Reynolds, Taylor and Fowler, claiming First Amendment retaliation, Fourteenth Amendment deliberate indifference and breach of contract.[17] Mr. Talbert bases each claim on their medical decision to not prescribe Xanax to treat his illnesses.

## II. Analysis

Mr. Talbert now moves for a mandatory preliminary injunction asking we order Dr. Reynolds to prescribe him Xanax under a controlled protocol. "[A] request for some form of mandatory proactive injunctive relief in the prison context 'must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'"[18] A mandatory preliminary injunction is an extraordinary remedy which courts should grant sparingly.[19] We may grant a mandatory preliminary injunction only in the most unusual cases where the movant's right to relief is "indisputably clear."[20] "Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party."[21] The movant for a mandatory preliminary injunction bears a "particularly heavy" burden,[22] which is to show by clear and convincing evidence[23] "the 'preliminary injunction [is] the only way of protecting the [him] from harm.'"[24] Our Court of Appeals instructs, "upon an application for a preliminary injunction to doubt is to deny."[25]

3

Rule 65 of the Federal Rules of Civil Procedure governs *pro se* pleadings which seek extraordinary or emergency relief through a preliminary injunction and are judged against "exacting legal standards."[26] We are also mindful of the standards applied to a request for mandatory injunctive relief, we consider four factors in determining whether to issue a preliminary injunction:

> "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest."[27]

To succeed, Mr. Talbert "must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted."[28] If Mr. Talbert fails to satisfy his burden on these elements, his motion should be denied.[29]

Compounding the burden on obtaining mandatory injunctive relief, Congress also limits our authority to enjoin a prison official's exercise of discretion.

> "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."[30]

Congress further instructs:

> "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice

4

> system caused by the preliminary relief and shall respect the
> principles of comity . . . in tailoring any preliminary relief."[31]

Inmates frequently seek mandatory injunctive relief directing prison officials to take certain actions during the pendency of their lawsuit.[32] But courts seldom grant these requests, instead routinely holding prisoner-plaintiffs are not "entitled to use a motion for preliminary injunction as a vehicle to compel prison officials to provide them with specific relief and services pending completion of their lawsuits."[33] Courts are particularly cautious of an inmate seeking mandatory preliminary injunction to obtain specific medical treatment.[34] Such requests are typically declined because of the inmate's failure to demonstrate the threshold elements: a likelihood of success on the merits or irreparable harm absent the injunction.[35]

### A. Mr. Talbert fails to show an indisputably clear right to relief.

Mr. Talbert alleges Dr. Reynolds' medical decision exhibit deliberate indifference. Because Mr. Talbert is a pretrial detainee, we construe his deliberate indifference claim in violation of the Due Process Clause of the Fourteenth Amendment. To sustain this claim against a prison official, Mr. Talbert must satisfy two elements: (1) "'the deprivation alleged must be, objectively, sufficiently serious;' and (2) the "prison official must have a sufficiently culpable state of mind.""[36] But to establish a violation of a constitutional right to adequate medical care, Mr. Talbert must allege facts demonstrating (1) acts or omissions by prison officials which indicate deliberate indifference to a (2) serious medical need.[37]

In the prison context, "that state of mind is one of 'deliberate indifference' to inmate health or safety."[38] Deliberate indifference is a subjective standard and the prison official defendant must actually have known or been aware of the excessive risk to inmate safety.[39] Regarding this subjective component, courts hold a "mere generalized knowledge . . . prisons are dangerous places does not give rise to [a deliberate indifference] claim."[40]

5

"A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[41] A medical need may be considered "serious" if "'unnecessary and wanton infliction of pain' results as a consequence of denial of delay in the provision of adequate medical care."[42] Mere disagreements as to proper medical treatment does not constitute deliberate indifference to a serious medical need.[43]

We consider Mr. Talbert's claims considering the great deference given to prisons facing deliberate indifference claims. Our Court of Appeals instructs "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."[44] In the "prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate."[45] The "exercise by a doctor of his professional judgment is never deliberate indifference."[46]

Mr. Talbert argues the prison psychiatrist's insistence to provide "less efficacious" alternatives such as Pamelor or Buspirone, constitutes deliberate indifference.[47] He argues he shows a reasonable likelihood to succeed on the merits of his claims because he demonstrated: (1) his mental illnesses are serious, (2) lack of competent medical care by his deprivation of Xanax for non-medical purposes, and (3) Dr. Reynolds tried to provide an alternative to Xanax, and when the Dr. Reynolds discontinued the alternative, she did not re-prescribe Xanax.

Dr. Reynolds counters she offered several different anti-depressant medications, but they merely disagreed with Mr. Talbert as to the best course of treatment.[48]

We are guided by *Moneyham v. Ebbert*, where the district court denied several *pro se* inmate preliminary injunctions for failure to show a likelihood of success on the merits.[49] Inmate Moneyham had an "incident" with prison officials, resulting in the inmate being placed in

6

restraints.[50] Inmate Moneyham claimed prison officials denied him "pain medication, dental care, and eye care, both at the time of the February 21, 2015 incident and in the time since."[51] Inmate Moneyham sued prison officials for deliberate indifference to his serious medical needs.

On the first preliminary injunction, inmate Moneyham requested new prescription eyeglasses because his old pair got scratched and damaged in the incident.[52] The district court concluded this did not constitute a "serious medical need."[53] In his second preliminary injunction, inmate Moneyham requested "an order directing the prison dentist to provide dental treatment."[54] The prison dentist wanted to extract one of the inmate Moneyham's teeth, but the inmate refused.[55] The district court denied the injunction, stating a mere disagreement as to the proper medical treatment [does not] support a claim of deliberate indifference.[56] Inmate Moneyham requested in his third preliminary injunction an order directing prison doctors to provide nerve pain medication.[57] The district court concluded inmate Moneyham's complaint contained insufficient factual allegations to establish the prison's discontinuation of his medication implicated a serious medical need.[58] Our Court of Appeals agreed with the district court on each of these denials.[59]

Like inmate Moneyham, Mr. Talbert's allegations fall far short of satisfying his exacting burden. Mr. Talbert fails to show the prison psychiatrist acted with deliberate indifference because she offered him a significant level of medical care by prescribing him Pamelor and Buspirone.[60] The prison psychiatrist allegedly discontinued Xanax for legitimate reasons of prison administration.[61] Mr. Talbert also fails to show his medical need is "serious." Mr. Talbert merely disagreed with the prison psychiatrists about the best medication for him. Prison psychiatrists stopped the Pamelor when Mr. Talbert complained about it.[62] But such a disagreement does not entitle Mr. Talbert to his drug of choice.

7

Mr. Talbert showed a history of mental problems and his preferred treatment for them, but he did not show his medical need is sufficiently "serious." Mr. Talbert shows his disagreement with prison psychiatrists about which medication is best, but mere disagreements about proper medical treatment does not constitute deliberate indifference to a serious medical need.[63] He has not demonstrated an indisputably clear right to mandatory injunctive relief.

### B. Mr. Talbert fails to show irreparable harm.

Almost a year after filing this case against Dr. Reynolds, Mr. Talbert now claims the decision over a year ago to not prescribe Xanax causes him imminent irreparable injury. He does not want to be a "guinea pig" and is "not comfortable" taking other anti-depressants.[64]

"Irreparable injury is established by showing [the movant] will suffer harm that 'cannot be redressed by a legal or an equitable remedy following trial.'"[65] The movant's burden is a "clear showing of immediate irreparable injury," which is more than just a serious or substantial harm.[66] "The irreparable harm alleged must be actual and imminent, not merely speculative."[67] "[An injunction] may not be used 'simply to eliminate the possibility of a remote future injury.'"[68] Our Court of Appeals instructs "[t]he word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for . . . .'"[69] If the inmate's requested injunctive relief "necessarily seeks resolution of one of the ultimate issues presented" in the complaint, irreparable harm cannot be shown "because the ultimate issue presented will be decided either by this court, upon consideration of defendants' motion[s] . . ., or at trial."[70]

Mr. Talbert argues he suffers "suicidal-homicidal thoughts; thoughts of past trauma; panic attacks on the regular; and [to be] up all night without sleep."[71] Without Xanax for over the past year, Mr. Talbert is afraid of large crowds and "[s]hould he continue this lifestyle, something tragic is bound to happen."[72] Dr. Reynolds counters Mr. Talbert did not demonstrate irreparable harm

8

because he alleged the prison psychiatrists made alternative anti-depressants available to him and his alleged harm is too speculative.[73]

Mr. Talbert's speculative harm is a long way from the rare cases of irreparable harm we recognize in prison medical care. In *Segalow v. County of Bucks*, *pro se* inmate Segalow suffered "from severe cervical stenosis with spinal cord atrophy and spastic quadripareisis, . . . a permanent, degenerative condition" which could eventually render one a paraplegic.[74] The inmate requested a preliminary injunction for appropriate medical treatment during his incarceration, including prison staff delivering his medication rather than the inmate having to pick it up and receiving catheters in a timely manner.[75] An independent medical examiner evaluated inmate Segalow and concluded he suffered "severe and incapacitating disease processes that will continue to decompensate." Considering the independent medical examiner's conclusion, the district court issued a preliminary injunction finding inmate Segalow demonstrated "a substantial threat of irreparable injury and a reasonable probability of success on the merits."[76]

*Segalow* is among the most unusual cases where the movant had an indisputably clear right to relief. Inmate Segalow suffered a potentially life-threatening illness which inhibited the use of his limbs and ultimately his ability to walk. Inmate Segalow required specific treatment to combat his disease. Inmate Segalow also had an independent medical examiner's report to support his claims. In contrast, Mr. Talbert challenges his prison's choice of prescriptions.[77] Simply claiming Pamelor or Buspirone is ineffective as to him does not mean Xanax is the only effective option. Mr. Talbert alleges "something tragic is bound to happen,"[78] in an attempt to show irreparable harm. This is a speculative and remote alleged harm, compared to inmate Segalow's immediate and serious harm supported by the independent medical examiner's report.

9

Mr. Talbert fails to show his harm is irreparable. Mr. Talbert describes at length his current suffering because he cannot access Xanax. Mr. Talbert claims he suffers mental torture, but he does not claim this mental torture is permanent without an immediate Xanax prescription. Presumably, this mental torture would cease when Mr. Talbert obtains Xanax, whether today or in the future. Mr. Talbert also fails to show his injury is immediate. By merely arguing "something tragic is bound to happen," Mr. Talbert simply speculates a remote future injury. Mr. Talbert also fails to prove irreparable harm because he alleged monetary damages as an adequate remedy for his deliberate indifference claim.[79] Mr. Talbert fails because an ultimate issue in his complaint, whether his denial of Xanax constitutes a deliberate indifference claim, will be resolved absent issuing a preliminary injunction.[80]

### III. Conclusion

We deny Mr. Talbert's motion for a mandatory preliminary injunction to direct Dr. Reynolds to prescribe him Xanax. Considering his "particularly heavy"[81] burden, Mr. Talbert failed to show an indisputably clear right to relief or imminent irreparable harm.

---

[1] *Theresa Victory et al. v. Berks County et al.*, Nos. 19-1329, 19-2193, 19-2648, 19-2695, 2019 WL 5095755, at *4 n. 9 (3d. Cir. Oct. 11, 2019)(citing *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013) (describing our heightened standard) and *Bennington Foods LLC v. St. Croix Reinsurance Group,LLP*, 528 F.3d 176, 179 (3d Cir. 2008)); *see also Communist Party of Indiana v. Whitcomb*, 409 U.S. 1235 (1972) (describing a mandatory injunction as an "extraordinary remedy [to] be employed only in the most unusual case."); *United States v. Spectro Foods Corporation*, 544 F.2d 1175, 1181 (3d Cir. 1976) ("The power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised.").

[2] ECF Doc. 100, at 1; ECF Doc. 73 at ¶ 69.

[3] ECF Doc. 73, at ¶ 67.

[4] ECF Doc. 100, at 5.

[5] *Id.,* at 2, 5.

[6] ECF Doc. 73, at ¶¶ 5, 70, 84.

[7] *Id.*, at ¶ 77.

[8] ECF Doc. 100, at 4; ECF Doc. 73 at ¶ 71.

[9] ECF Doc. 73, at ¶¶ 71-72 (Mr. Talbert never received "information pertaining to [Pamelor's] color, shape, or side-effects.").

[10] ECF Doc. 100, at 4; ECF Doc. 73 at ¶ 73.

[11] ECF Doc. 73, at ¶ 74.

[12] ECF Doc. 100, at 6.

[13] *Id.*

[14] *Id.,* at 2.

[15] *Id.*

[16] *Id.*

[17] ECF Doc. 73; ECF Doc. 100, at 7.

[18] *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (citing *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)); *see Forrest v. Horn*, No. 97-4442, 1999 WL 552546, at *3 (E.D. Pa. June 29, 1999) (citing *Goff*, 60 F.3d at 520); *Njos v. United States*, No. 14-1960, 2015 U.S. Dist. LEXIS 133538, at *8 (M.D. Pa. Sept. 2, 2015) (citing *Goff*, 60 F.3d at 520); *Burton v. Wetzel*, No. 16-1953, 2017 WL 4284345, at *7 (M.D. Pa. Sept. 27, 2017) (citing *Goff*, 60 F.3d at 520); *Breeland v. Fisher*, No. 12-84, 2012 WL 4105090, at *4 (M.D. Pa. July 25, 2012) (citing *Goff*, 60 F.3d at 520).

[19] *Trinity Indus., Inc.*, 735 F.3d at 139; *see also Spectro Foods Corporation*, 544 F.2d at 1181.

[20] *Communist Party of Indiana*, 409 U.S. 1235 (1972) (describing a mandatory injunction as an "extraordinary remedy [to] be employed only in the most unusual case.").

[21] *Njos*, 2015 U.S. Dist. LEXIS 133538, at *4.

[22] *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980).

²³ *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

²⁴ *Campbell Soup Company v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

²⁵ *Madison Square Garden Corporation v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937).

²⁶ *Njos*, 2015 U.S. Dist. LEXIS 133538, at *4 ; Fed. R. Civ. P. 65.

²⁷ *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir.1985)).

²⁸ *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989) (citing *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987)) (emphasis in original).

²⁹ *Hohe*, 868 F.2d at 72; *see also Njos*, 2015 U.S. Dist. LEXIS 133538, at *11.

³⁰ 18 U.S.C.A. § 3626(a)(1)(A).

³¹ 18 U.S.C.A. § 3626(a)(2).

³² *See Njos*, 2015 U.S. Dist. LEXIS 133538, at *10.

³³ *Njos*, 2015 U.S. Dist. LEXIS 133538, at *10; *see also Moneyham v. Ebbert*, 723 Fed. App'x 89, 90 (3d Cir. 2018) (denying *pro se* inmate preliminary injunction); *Iseley v. Dragovich*, 236 F. Supp. 2d 472 (E.D. Pa. 2002) (denying *pro se* inmate's motion for preliminary injunction).

³⁴ *See Njos*, 2015 U.S. Dist. LEXIS 133538, at *10-11.

³⁵ *See Njos*, 2015 U.S. Dist. LEXIS 133538, at *11; *see Rivera v. Pennsylvania Department of Corrections*, 346 Fed. App'x 749 (3d Cir. 2009) (Denying the movant a preliminary injunction for failure to show irreparable harm); *Quinn v. Palakovich*, 204 Fed. App'x 116 (3d Cir. 2006) (Denying the movant a preliminary injunction for failure to show a likelihood of success on the merits).

³⁶ *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); We recognize courts originally applied this standard to Eighth Amendment violations of prisoners, but our Court of Appeals instructs this standard also applies to a pretrial detainee's claims for inadequate medical treatment in violation of the Fourteenth Amendment. *See Edwards v. Northampton County*, 663 F. App'x 132, 135 (3d Cir. 2016).

³⁷ *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

³⁸ *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

³⁹ *Beers-Capitol*, 256 F.3d at 125.

[40] *See Njos*, 2015 U.S. Dist. LEXIS 133538, at *12 (citing *Jones v. Beard*, 145 Fed. App'x 743 (3d Cir. 2005)).

[41] *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal citations omitted).

[42] *Lanzaro*, 834 F.2d at 347 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

[43] *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citing *Lanzaro*, 834 F.2d at 347); *see e.g.*, *Gause v. Diguglielmo*, 339 Fed. App'x 132 (3d Cir. 2009) (dispute over choice of medication did not rise to level of Eighth Amendment violation).

[44] *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

[45] *Njos*, 2015 U.S. Dist. LEXIS 133538, at *14 (citing *Clark v. Doe*, No. 99-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)).

[46] *Gindraw v. Dendler*, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

[47] ECF Doc. 100, at 4.

[48] ECF Doc. 111, at 4.

[49] *Moneyham*, 723 Fed. App'x at 92.

[50] *Id.* at 91.

[51] *Id.*

[52] *Id.* at 92.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* (citing *Lanzaro*, 834 F.2d at 346).

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] ECF Doc. 100, at 6; ECF Doc. 73 at ¶ 71.

[61] ECF Doc. 73 at ¶ 77.

[62] ECF Doc. 100, at 4.

[63] *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citing *Lanzaro*, 834 F.2d at 347).

[64] Complaint, ECF Doc. No. 2, ¶ 55.

[65] *Messner v. Bunner*, No. 07-112, 2009 WL 1406986, at *3 (W.D. Pa. Jan. 26, 2010) (citing *Instant Air Freight Company v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm")).

[66] *ECRI v. McGraw-Hill*, 809 F.2d 223, 226 (3d Cir. 1987) (citing *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)).

[67] *Moneyham*, 723 Fed. App'x at 92.

[68] *Acierno v. New Castle County*, 40 F.3d 653, 655 (citing *Continental Group, Inc. v. Amoco Chemicals Corporation*, 614 F.2d 351 (3d Cir. 1980)).

[69] *Acierno*, 40 F.3d at 653.

[70] *Burton v. Wetzel*, No. 16-1953, 2017 WL 4284345, at *6 (M.D. Pa. Sept. 27, 2017) (citing *Messner v. Bunner*, No. 07-112, 2009 WL 1406986, at *5 (W.D. Pa. Jan. 26, 2010)).

[71] ECF Doc. 100, at 5.

[72] *Id.*, at 5.

[73] ECF Doc. 111, at 4.

[74] *Segalow v. County of Bucks*, No. 00-5642, 2002 WL 323498, at *8 n.5 (E.D. Pa. Feb. 12, 2002).

[75] *Id.*

[76] *Id.*

[77] *See, e.g., Moneyham*, 723 Fed. App'x at 91 (Inmate claimed inadequate dental and eye care and deprivation of pain medication); *Rivera v. Pennsylvania Department of Corrections*, 346 Fed. App'x 749 (3d Cir. 2009) (Inmate claimed denial of adequate medical treatment for a skin fungus and digestive condition); *Njos*, 2015 U.S. Dist. LEXIS 133538, at *2 (Inmate claimed inadequate mental health and psychological care).

[78] ECF Doc. 100, at 5.

---

[79] ECF Doc. 73 at ¶ 100; *see Rivera v. Pennsylvania Department of Corrections*, 346 Fed. App'x 749, 751 (3d Cir. 2009).

[80] *See Messner,* 2009 WL 1406986, at *5; *Njos*, 2015 U.S. Dist. LEXIS 133538, at *20.

[81] *Punnett*, 621 F.2d at 582.