| CHARLES TALBERT | : CIVIL ACTION |
| | : |
| v. | : NO. 18-5112 |
| | : |
| CORRECTIONAL DENTAL | : |
| ASSOCIATES, *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**                                                    **February 21, 2020**

While we require our correctional institutions provide medical and mental health care to the medical needs of inmates, we do not second guess prescription and treatment decisions substantiated with medical reasons simply because an inmate patient desires a different medication unless the professionals ignore the inmate's demonstrated phobia of certain treatments. We are mindful of the need to ensure inmates' mental health. But a prison handbook or statutory obligation is not a contractual obligation upon our correctional officials. In inmate Charles Talbert's fourth attempt at pleading claims against mental health and dental professionals arising from his pretrial detention in Philadelphia prisons, we today dismiss his claims against the mental health professionals who decided to not prescribe Xanax given the risk of addictions and sale of this narcotic as an anti-depressant in prisons but who instead prescribed other anti-anxiety medications. Mr. Talbert confuses his ability to receive his preferred Xanax medication outside of prison with a doctor's constitutional obligation to provide him medical care while incarcerated. But the prison dentists, as the Court of Appeals recently reminded them in another case brought by Mr. Talbert, must be mindful of his treatment needs including an appropriate treatment to address demonstrated phobia in caring for his dental needs while incarcerated. After four attempts,

Mr. Talbert pleads a deliberate indifference claim against the two dentists and may proceed on his three remaining constitutional claims against them.

## I.    Alleged *pro se* facts[1]

In his fourth and self-described final amended complaint, Charles Talbert alleges prison psychiatrists denied him his preferred Xanax prescription for unconstitutional reasons. He also alleges prison dentists disregarded his needle phobia and refused to send him offsite to an oral specialist using anesthesia upon patients afraid of needles. He claims this conduct violated prison policy and Pennsylvania statutes as a matter of contract and constituted deliberate indifference to his medical care.

### *Anti-anxiety prescriptions.*

Charles Talbert long wrestled with post-traumatic stress disorder, insomnia, anxiety, and depression, including while a pretrial detainee in a Philadelphia prison from September 2018 through September 2019.[2] Before entering prison in September 2018, Mr. Talbert took Xanax to control the symptoms of his post-traumatic stress disorder and repeatedly asked the prison psychiatrists to prescribe him Xanax.[3] Once incarcerated, prison psychiatrists explained they do not prescribe Xanax because it is expensive, highly addictive, a controlled substance, and capable of being sold in prison.[4] The prison psychiatrists denied his requests for Xanax.[5] Mr. Talbert filed numerous prison grievances and lawsuits against medical and dental professionals during this custody including against mental health employees who are allegedly colleagues of Drs. Taylor, Fowler, Reynolds, and Lisco."[6]

Drs. Reynolds, Fowler, Taylor, and Lisco "disregarded his prior history of taking Xanax" and "alternatively tried to give [him] psychiatric medication that either: (A) didn't work at all, (B)

2

caused conditions to worsen, (C) caused [him] to feel disconnected from himself, [and] (D) caused [him] a heart injury."[7]

Dr. Reynolds instead prescribed Pamelor, an antidepressant medication, on October 1, 2018.[8] Dr. Reynolds never disclosed information about the appearance of Pamelor's pills or its side effects to him.[9] Mr. Talbert took Pamelor under the mistaken assumption the pills were generic pain or antibiotic medications for his tooth infection.[10]

Ten days later, Dr. Fowler discontinued the Pamelor prescription after an EKG report showed the medication injured Mr. Talbert's heart.[11] Mr. Talbert asked Dr. Fowler for the name of the psychiatrist who prescribed the Pamelor, and Mr. Talbert alleges Dr. Fowler would not answer.[12]

On October 29, 2018, Mr. Talbert asked Dr. Taylor to discontinue his prescription for Buspirone, an anti-anxiety medication.[13] Mr. Talbert alleges he did not feel safe because he believed the prison psychiatrists prescribed him Buspirone for experimental research purposes.[14] Dr. Taylor discontinued the prescription.[15]

Mr. Talbert pleads four claims against Drs. Taylor, Fowler, Reynolds, and Lisco: (1) violation of prison policy; (2) violation of Pennsylvania's Mental Health Procedures Act; (3) First Amendment retaliation; and (4) due process and equal protection under the Fourteenth Amendment.[16]

### *Dental treatment*

During this same period of detention, Mr. Talbert also suffered dental problems such as broken teeth, infected teeth, decayed teeth, and cavities, all causing excruciating pain.[17] Seeking treatment, Mr. Talbert submitted "various sick call request forms" and made multiple visits to prison dentists Drs. Paresh Patel and Sherri Schneider at his prison's dental clinic, but each visit

3

proved unproductive.[18] Drs. Patel and Schneider are licensed dentists employed by Correctional Dental Associates and contracted by the Philadelphia Department of Prisons to provide inmates with dental services.[19]

Prison dentists faced complications treating Mr. Talbert because he has a "phobia of needles being in his mouth while [awake]."[20] Drs. Patel and Schneider learned of Mr. Talbert's phobia from his series of dental clinic visits, sick call request submissions, and his earlier lawsuits against prison healthcare providers.[21] Despite their knowledge, prison dentists did not consider Mr. Talbert's phobia while developing his "treatment plan."[22] Drs. Patel and Schneider refused to administer Mr. Talbert antibiotics or pain medication at any point during his detention other than once in April 2019.[23] Mr. Talbert attempted to treat himself by pulling one of his own teeth so Dr. Patel ordered him a seven day prescription of pain medication.[24] Drs. Patel and Schneider's lack of treatment worsened Mr. Talbert's dental conditions and he continued experiencing pain and discomfort.[25]

Mr. Talbert also pleads four claims against Drs. Patel and Schneider: (1) violation of prison policy; (2) violation of Pennsylvania Health Care Facilities Act and Dental Law; (3) First Amendment retaliation; and, (4) due process and equal protection under the Fourteenth Amendment.[26]

## II. Analysis

Mental health professionals Drs. Taylor, Fowler, Reynolds, and Lisco move to dismiss each count of Mr. Talbert's final amended complaint for failure to state a claim.[27] Drs. Patel and Schneider partially move to dismiss Mr. Talbert's claims for violation of prison policy and Pennsylvania's Health Care Facilities Act and Dental Law.[28] Drs. Patel and Schneider do not challenge Mr. Talbert's constitutional claims.[29]

4

Before addressing the merits of the pending claims, we clarify Mr. Talbert is not proceeding on a medical negligence or malpractice claim. On October 24 and November 8, 2019, Drs. Reynolds, Taylor, and Fowler noticed their intent to enter judgment of *non pros* for Mr. Talbert's failure to file a certificate of merit under Pennsylvania Rule of Civil Procedure 1042.3.[30] This Pennsylvania Rule requires Mr. Talbert to file a certificate of merit for "any action based upon an allegation that a licensed professional deviated from an acceptable professional standard."[31] A certificate of merit must accompany claims of medical malpractice and professional negligence. In his November 5, 2019 response, Mr. Talbert argued his final amended complaint did not allege medical malpractice or professional negligence.[32] He clarified his claims allege "deliberate indifference to a serious medical need that caused [him] an actual injury to his heart and mental torture by depriving him Xanax to treat his post[-]traumatic stress and insomnia."[33]

We struck the psychiatrists' notices of intent on November 8, 2019.[34] We accepted Mr. Talbert's judicial admission he does not claim medical malpractice or professional negligence. We held Mr. Talbert could proceed on a deliberate indifference claim against prison psychiatrists without a certificate of merit.[35]

## A.  We dismiss Mr. Talbert's claim for breach of prison policy and Pennsylvania's Mental Health Procedures Act against Drs. Taylor, Fowler, Reynolds, and Lisco.

Mr. Talbert alleges Drs. Taylor, Fowler, Reynolds, and Lisco violated prison policy by "[Dr.] Reynolds doing a bridge order causing [Mr. Talbert] an injury upon his heart; by [Dr.] Fowler and [Dr.] Taylor trying to cover it up; and by [Drs.] Reynolds, Fowler, Taylor, and Lisco denying [Mr. Talbert] Xanax to alleviate his symptoms from PTSD."[36]  He alleges the psychiatrists' actions violated Prison Policy Number 4.E.16.5, which allegedly provides: "the policy in regards to behavior health evaluations, is based on and subject to the Commonwealth of

5

Pennsylvania Mental Health Procedurals Act and (all) regulations promulgated thereunder...A psychiatrist, nurse practitioner, or licensed clinical psychologist will be designated by the facility behavior health care provider to (assure) that each inmate receives evaluation and treatment under the Act and that the (responsibilities) to the inmate, as defined by the Act, are discharged appropriately."[37]

Mr. Talbert also alleges Drs. Taylor, Fowler, Reynolds, and Lisco "engaged in a practice of disparate treatment and depriving [Mr. Talbert] required prescriptions of Xanax for his aforesaid [post-traumatic stress disorder]."[38] Mr. Talbert cites Pennsylvania's Mental Health Procedures Act at section 7104 providing, "'treatment' is defined as diagnosis, evaluation, therapy, or rehabilitation needed to alleviate pain and distress and to facilitate the recovery of a person from mental illness... 'Adequate Treatment' is a course of treatment designed and administered to (alleviate) a persons [sic] pain and distress and to maximize the probability of his recovery from mental illness."[39]

Mr. Talbert alleges the prison psychiatrists failed to provide him with adequate mental health treatment, amounting to claims of professional negligence and medical malpractice. As Mr. Talbert judicially admitted he does not claim professional negligence or medical malpractice, these claims fail as a matter of law.[40] But we must construe Mr. Talbert's *pro se* complaint liberally. While we are mindful of the need to ensure inmates' mental health in the same manner as we do physical or dental health,[41] we cannot craft claims for *pro se* plaintiffs when there is no basis in fact. We are also aware this is Mr. Talbert's fourth and final attempt at pleading claims relating to his preferred Xanax and we are particularly aware Mr. Talbert is familiar with rights to grieve and challenge constitutional deprivations in correctional facilities. [42]

6

We evaluate his arguments under both breach of contract and deliberate indifference standards. Mr. Talbert fails to plead a cause of action under either standard.

### a.  Mr. Talbert fails to plead a breach of contract.

Mr. Talbert alleges Drs. Taylor, Fowler, Reynolds, and Lisco violated prison policy by "[Dr.] Reynolds doing a bridge order causing [Mr. Talbert] an injury upon his heart; by [Dr.] Fowler and [Dr.] Taylor trying to cover it up; and by [Drs.] Reynolds, Fowler, Taylor, and Lisco denying [Mr. Talbert] Xanax to alleviate his symptoms from PTSD."[43]  Mr. Talbert also alleges the prison psychiatrists' refusal to prescribe him Xanax violated Pennsylvania's Mental Health Procedures Act. Mr. Talbert formulated his prison policy and Pennsylvania state statute claims as breach of contract claims elsewhere in his complaint against other Defendants.[44]  Assuming Mr. Talbert intended to use the same legal argument against the prison psychiatrists, we construe his allegation as seeking remedies for breach of contract.

"To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege three things: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages."[45]  Pennsylvania courts generally do not recognize handbooks as contracts without a clear intent of the parties to give a handbook contractual force.[46]  This is particularly true in the prison context where an inmate cannot "accept an offer from the [State Correctional Institution]" or reach a "'meeting of the minds' upon the terms of the handbook."[47]

We are persuaded by Judge Lenihan's cogent analysis in *Brightwell v. Lehman*.[48]  Mr. Brightwell, an inmate, alleged the Department of Corrections defendants breached a Special Management Unit contract with him when, upon completion of the Special Management Unit program, they transferred him to another facility rather than releasing him into the general

population.[49] The district court dismissed the claim, concluding the handbook did not constitute a contract as a matter of law.[50]

Mr. Talbert lists a Philadelphia prison policy section and a Pennsylvania state statute in alleging the existence of an enforceable contract. Mr. Talbert's claim fails because he did not sufficiently plead Drs. Taylor, Fowler, Reynolds, and Lisco breached the policy. Mr. Talbert merely alleges Dr. Reynolds breached some part of prison policy when he ordered a medication which caused adverse side effects, Drs. Fowler and Taylor breached by declining to tell Mr. Talbert Dr. Reynolds's name, and Drs. Reynolds, Fowler, Taylor, and Lisco breached by failing to prescribe him his antidepressant of choice.

Mr. Talbert did not allege the existence of a contract with these essential terms, a breach of a contractual duty bore by any of the Defendants, nor plead prison policy terms giving the policy contractual force. Absent pleading the contract elements, we dismiss his breach of contract claim.

### b. Mr. Talbert fails to plead deliberate indifference to a serious medical need by the mental health professionals.

We also interpret Mr. Talbert as alleging "deliberate indifference to a serious medical need that caused [Mr. Talbert] an actual injury to his heart, and mental torture by depriving him Xanax to treat his post[-]traumatic stress and insomnia."[51] Because Mr. Talbert is a pretrial detainee, we construe Mr. Talbert's complaint as alleging deliberate indifference to a serious medical need under the Due Process Clause of the Fourteenth Amendment.[52]

Inmates have the constitutional right to adequate medical care.[53] For a claim of deliberate indifference to survive a motion to dismiss, our Court of Appeals requires an inmate plead "(1) ...the defendants were deliberately indifferent to their medical needs and (2) . . . those needs were serious."[54]

8

A prison official acts with deliberate indifference if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[55] But neither simple allegations of negligence and malpractice,[56] nor mere disagreements as to proper medical treatment,[57] constitute deliberate indifference to a serious medical need. Our Court of Appeals held an inmate's pleading he should have been treated with stronger pain and anti-anxiety medications amounted to "mere disagreement as to the proper medical treatment" and the district court properly dismissed his deliberate indifference claim.[58] Examples of deliberate indifference include when the prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; [] (3) prevents a prisoner from receiving needed or recommended medical treatment[;]"[59] and (4) "persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'"[60]

"A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[61] A medical need may be considered "serious" if "'unnecessary and wanton infliction of pain' results as a consequence of denial of delay in the provision of adequate medical care."[62]

In support of his deliberate indifference claim, Mr. Talbert relies on several cases from courts outside of our circuit. Each is distinguishable. Mr. Talbert cites *Waldrop v. Evans*, misinterpreting the case as holding "choice of an easier but less efficacious cause of treatment of an inmate can constitute deliberate indifference."[63] In *Waldrop*, the Court of Appeals for the Eleventh Circuit affirmed denial of a prison psychiatrist's summary judgment motion on a

9

deliberate indifference claim when the psychiatrist removed an inmate from medication entirely and refused to prescribe a different medication.[64] Here, the mental health professionals prescribed an alternative medication.

Mr. Talbert argues the Court of Appeals for the Sixth Circuit in *Richmond v. Huq* provides support for his claim because "neglecting a prisoner's medical need and interrupting a prescribed plan of treatment can constitute a constitutional violation."[65]   *Huq* involves prison staff who allegedly provided an inmate with inadequate wound care treatment and deprived her of psychiatric medication while in custody.[66] Mr. Talbert has not been deprived of his medication. His physician refused to prescribe his preferred medication, prescribing alternate medications. Mr. Talbert also argues *Antonelli v. Sheahan* applies,[67] where the Court of Appeals for the Seventh Circuit held the district court should deny the motion to dismiss an inmate's claims the prison psychology department deprived him of all medical treatment.[68] Mr. Talbert has not been deprived of all medical treatment.

Turning to cases which govern our analysis, Mr. Talbert cites our Court of Appeals' decision in *White v. Napoleon*, [69] where a prisoner alleging a physician intentionally inflicted pain survived a motion to dismiss because he pled a number of specific instances where the physician allegedly continued painful, ineffective, or risky courses of treatment.[70] Mr. Talbert does not allege specific instances of continued painful, ineffective, or risky medical treatment. Mr. Talbert further argues "doctors must consider prisoners' reasonable need to make an informed decision to accept or reject treatment..."[71] This specific statement refers to a prison doctor refusing to answer an inmate's medical questions or read him ingredients of a medication. Mr. Talbert does not allege his physician refused to answer his medical questions. Mr. Talbert's claim the doctors would not identify other doctors is not a question relating to his need for medical care.

10

Mr. Talbert also cites *Norris v. Frame*, where our Court of Appeals determined a prison physician's refusal to continue methadone treatment from an approved facility interfered with a pretrial detainee's liberty.[72] Our Court of Appeals held a detainee could assert deprivation of liberty interests when a prison physician terminated a course of treatment without demonstrating a legitimate interest in doing so and he violated Pennsylvania procedures for the termination of a methadone recipient.[73] Mr. Talbert is not the recipient of a medication which can only be distributed by an approved facility, but rather alleges prison doctors refused his request for Xanax and prescribed different medications.

Mr. Talbert suffers from post-traumatic stress disorder, causing symptoms such as anxiety and insomnia.[74] A physician diagnosed his medical need as requiring treatment. Mr. Talbert pleads a doctor prescribed him Xanax to control the symptoms of his disorder before he entered prison.[75] We conclude Mr. Talbert's medical need is serious.

But we now evaluate whether Mr. Talbert pleads deliberate indifference as to each of the prison psychiatrists.

### i. We dismiss Mr. Talbert's deliberate indifference claim against Dr. Reynolds.

We liberally interpret Mr. Talbert's claims as arguing Dr. Reynolds demonstrated deliberate indifference to a serious medical need by "doing a bridge order causing [him] an injury upon his heart" and "denying [him] Xanax to alleviate his symptoms from PTSD."[76] Dr. Reynolds responds Mr. Talbert fails to allege Dr. Reynolds's knowledge and disregard of an excessive risk to Mr. Talbert's safety.[77] Dr. Reynolds argues he prescribed Mr. Talbert an alternative medication, Pamelor, to treat Mr. Talbert's symptoms. Although Pamelor adversely affected Mr. Talbert's heart, Dr. Reynolds argues "the mere development of an adverse reaction to a medication prescribed is not deliberate indifference."[78]

11

Mr. Talbert's claim of deliberate indifference for Dr. Reynolds's prescription of Pamelor, resulting in injury to his heart, fails. Mr. Talbert never plead Dr. Reynolds knew prescribing him Pamelor carried an excessive risk of heart injury and disregarded the risk. Even if Mr. Talbert could plead Dr. Reynolds knew Pamelor could cause heart conditions, prescribing medications with potential side effects does not necessarily amount to deliberate indifference to serious medical needs.[79]

For example, in *Bryant v. Kaskie*, an inmate alleged a nurse practitioner acted with deliberate indifference when she prescribed the inmate medication without informing of its common side effect, causing him to develop gynecomastia.[80] The district court dismissed the claim and our Court of Appeals affirmed,[81] finding the nurse practitioner's "alleged failure to inform [the inmate] of the potential side effects of [the medication] is insufficient to demonstrate deliberate indifference."[82] Our Court of Appeals reasoned, "[e]ven if this allegation could rise to the level of negligence, simple negligence cannot support an Eighth Amendment claim."[83]

Mr. Talbert's claim of deliberate indifference because Dr. Reynolds refused to prescribe him Xanax also fails. Mr. Talbert has no constitutional right to prescriptions of his drug of choice as a pretrial detainee. Mr. Talbert admits the prison psychiatrists explained the reasons they would not prescribe Xanax: it is expensive, highly addictive, a controlled substance, and is capable of being sold in prison.[84] Instead of prescribing Xanax, Dr. Reynolds prescribed a different antidepressant to address Mr. Talbert's medical condition.[85]

Prison medical professionals have "considerable latitude" in treating inmates' medical conditions.[86] Our Court of Appeals instructs us to "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment."[87] Dr. Reynolds's decision to prescribe Mr. Talbert an alternative

antidepressant to Xanax is not deliberate indifference, but instead constitutes a decision to pursue a certain course of treatment within the scope of his sound professional judgment.

### ii. We dismiss Mr. Talbert's deliberate indifference claim against Dr. Fowler.

We liberally interpret Mr. Talbert as alleging Dr. Fowler demonstrated deliberate indifference to a serious medical need by "trying to cover up" Dr. Reynolds's involvement in prescribing Pamelor and "denying [Mr. Talbert] Xanax to alleviate his symptoms from PTSD."[88] Dr. Fowler responds Mr. Talbert fails to allege Dr. Fowler's knowledge and disregard of an excessive risk to Mr. Talbert's safety.

Dr. Fowler's refusal to answer Mr. Talbert's question about the name of Dr. Reynolds is not a deliberate indifference claim. As plead, failure to provide Mr. Talbert a treating physician's name does not equate to an intentional refusal to provide treatment, delays to necessary medical treatment preventing the receipt of treatment, [89] or persisting in a particular course of treatment despite risk of permanent injury. [90] Mr. Talbert's claim of deliberate indifference to a serious medical need on this ground fails as to Dr. Fowler.

Mr. Talbert's claim of deliberate indifference to a serious medical need due to Dr. Fowler's refusal to provide him Xanax also fails. Dr. Fowler explained why he wouldn't prescribe Xanax.[91] Dr. Fowler discontinued the alternative antidepressant, Pamelor, because it adversely affected his heart.[92] Mr. Talbert provides no fact allowing us to infer Dr. Fowler had knowledge of and disregarded an excessive risk to Mr. Talbert's safety; instead, Dr. Fowler promptly discontinued the prescription of a drug proven harmful to Mr. Talbert's heart.

13

### iii. We dismiss Mr. Talbert's deliberate indifference claim against Dr. Taylor.

We liberally interpret Mr. Talbert alleging Dr. Taylor demonstrated deliberate indifference to a serious medical need by "trying to cover up" Dr. Reynolds's involvement in prescribing Pamelor and "denying [Mr. Talbert] Xanax to alleviate his symptoms from PTSD."[93] Dr. Taylor responds Mr. Talbert fails to allege Dr. Taylor's knowledge and disregard of an excessive risk to Mr. Talbert's safety.

Mr. Talbert does not plead a fact supporting his conclusory allegation Dr. Taylor tried to cover up Dr. Reynolds's involvement in prescribing Pamelor. Liberally interpreting Mr. Talbert's final complaint, he may intend to assert the same claim he asserts against Dr. Fowler: He asked Dr. Taylor to tell him the name of the psychiatrist who prescribed the Pamelor, and Dr. Taylor refused.[94] For the same reasons described for dismissing this claim against Dr. Fowler, this claim fails against Dr. Taylor.

Mr. Talbert's claim of deliberate indifference to a serious medical need due to Dr. Taylor's refusal to provide him Xanax also fails because Mr. Talbert does not plead Dr. Taylor's knowledge and disregard of an excessive risk to Mr. Talbert's safety.

### iv. We dismiss Mr. Talbert's deliberate indifference claim against Dr. Lisco.

We liberally interpret Mr. Talbert arguing Dr. Lisco acted with deliberate indifference to a serious medical need by "denying [Mr. Talbert] Xanax to alleviate his symptoms from PTSD."[95] Dr. Lisco responds Mr. Talbert fails to allege Dr. Lisco made decisions about his medications.

Mr. Talbert pleads Dr. Lisco "intentionally and carelessly denied [Mr. Talbert's] request for Xanax"[96] and explained why he wouldn't prescribe it.[97] Mr. Talbert does not plead Dr. Lisco's

14

knowledge and disregard of an excessive risk to Mr. Talbert's safety. Mr. Talbert's claim of deliberate indifference against Dr. Lisco also fails.

## B. Mr. Talbert fails to plead First Amendment retaliation against the prison psychiatrists.

Mr. Talbert alleges he filed several lawsuits and grievances against "mental health employees" who worked with Drs. Reynolds, Fowler, Taylor, and Lisco.[98] Mr. Talbert alleges the prison psychiatrists "disregarded [Mr. Talbert's] mental illnesses and left him to suffer" "in retaliation" for this protected speech.[99] We construe this claim as seeking a remedy for alleged First Amendment retaliation.

"A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."[100] Causation can be shown through an allegation of either "(1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link."[101] For *pro se* complaints of retaliation, the prisoner may sufficiently plead the causal link by including the word "retaliation" in his complaint.[102]

In *Mitchell v. Horn*, our Court of Appeals reversed the district court's dismissal of a *pro se* inmate's retaliation claim.[103] Mr. Mitchell alleged a prison officer retaliated against him by falsely charging misconduct and placing him in restricted housing after Mr. Mitchell used the prison's grievance procedure to complain about the officer.[104] Our Court of Appeals found Mr. Mitchell's "allegation that he was falsely charged with misconduct in retaliation for filing complaints against [the prison officer] implicates conduct protected by the First Amendment."[105] "[W]e believe . . . several months in disciplinary confinement would deter a reasonably firm prisoner from exercising

15

his First Amendment rights."[106] Our Court of Appeals considered a court's obligation to liberally construe a *pro se* litigant's complaint and concluded "the word 'retaliation' . . . sufficiently implies a causal link between [Mr. Mitchell's] complaints and the misconduct charges filed against him."[107]

Mr. Talbert alleges he engaged in constitutionally protected conduct. Mr. Talbert alleges his lawsuits and grievances against colleagues of Drs. Reynolds, Fowler, Taylor, and Lisco motivated them to retaliate.[108] Under our Court of Appeals' guidance in *Mitchell*, Mr. Talbert sufficiently alleges causation by pleading the word "retaliation" in his complaint to connect his protected conduct of which the doctors could have been aware to any adverse action he may have suffered.[109] But Mr. Talbert fails to plead an adverse action to satisfy the second prong of the First Amendment retaliation test.

Mr. Talbert alleges Drs. Taylor, Fowler, Reynolds, and Lisco "disregarded [his] mental illnesses and left him to suffer."[110] He provides no further allegation of adverse action, leaving us to infer the adverse action was the prison psychiatrists' "intentional[] and careless[] den[ial] [of his] request for Xanax."[111] But the prison psychiatrists did not deny Mr. Talbert treatment—they denied him access to his drug of choice, prescribing alternative anti-anxiety medications such as Pamelor and Buspirone.[112] They also provided Mr. Talbert four reasons why they do not prescribe Xanax: it is expensive, highly addictive, a controlled substance, and capable of being sold in prison.[113] Mr. Talbert also pleads the prison psychiatrists refused to prescribe Xanax to other incarcerated people who suffer from trauma, suggesting the prison psychiatrists do not prescribe Xanax to any inmate for the four stated reasons.[114]

Mr. Talbert does not plead retaliatory adverse action sufficient to satisfy the second prong. We could see how refusal to treat a mental illness could deter a person of ordinary firmness from

16

exercising his constitutional rights, but Drs. Reynolds, Fowler, Taylor, and Lisco did treat Mr. Talbert's mental illness. They did not prescribe his chosen Xanax. Mr. Talbert's pleadings demonstrate the prison psychiatrists treated Mr. Talbert with alternative medications and discontinued medications when they posed risks to his health or when he requested to stop taking them. The prison psychiatrists' medical decisions do not constitute adverse actions. Such a ruling would make every post-grievance medical decision subject to a retaliation claim. He needs to plead adverse action.

Because Mr. Talbert fails to plead an adverse action responsive to his protected activity sufficient to deter a person of ordinary firmness from exercising his constitutional rights, we must dismiss Mr. Talbert's First Amendment retaliation claim.

## C. Mr. Talbert fails to plead Equal Protection claims against the prison psychiatrists.

Mr. Talbert alleges the prison psychiatrists violate the Equal Protection Clause of the Fourteenth Amendment,[115] claiming "other inmates were provided controlled substances that were white, while others were deprived Xanax that were of color."[116] Mr. Talbert argues the prison psychiatrists' prescription of Suboxone but refusal to prescribe Xanax amounts to an equal protection violation. Mr. Talbert alleges "more white Americans have died from opiod abuse than any other race… this is why Suboxone is allowed" in the prison,[117] but "blacks that suffer traumatic events [do not] get prescribed Xanax, which is known to alleviate all symptoms of anxiety, insomnia, and PTSD."[118] He alleges Drs. Reynolds, Fowler, Taylor, and Lisco's explanation for why they do not prescribe Xanax—its cost, addictive quality, status as a controlled substance, and capability of being sold in prison—all apply to Suboxone.[119] But Mr. Talbert pleads the prison psychiatrists prescribe Suboxone because "more white Americans have died from opiod abuse than any other race."[120]

17

The Equal Protection Clause of the Fourteenth Amendment prohibits a state actor denying "to any person within its jurisdiction the equal protection of the laws."[121] "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiff[] must prove the existence of purposeful discrimination. [He] must demonstrate that [he] receiv[ed] different treatment from that received by other individuals similarly situated."[122] To state a claim for the denial of equal protection, Mr. Talbert must allege he is "(1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class."[123]

Drs. Reynolds, Fowler, Taylor, and Lisco interpret Mr. Talbert's equal protection claim to allege an equal protection "class of one" theory announced in *Village of Willowbrook v. Olech*.[124] But the equal protection "class of one" theory applies where the complaint does not allege membership in a class or group;[125] Mr. Talbert alleges the prison psychiatrists treated him differently on account of his race. We analyze his equal protection claim in the traditional framework.

Mr. Talbert pleads the prison psychiatrists denied him and other African American inmates Xanax while prescribing Suboxone to white inmates.[126] Mr. Talbert fails to plead he was similarly situated to members of an unprotected class. He does not plead white inmates suffering from post-traumatic stress disorder received Xanax while he did not. He does not plead he sought Suboxone and the prison psychiatrists denied his request but prescribed Suboxone to white inmates. Mr. Talbert instead compares the prison psychiatrists' refusal to prescribe him Xanax to the prison psychiatrists' prescription of a different drug to other inmates. Mr. Talbert, suffering from post-traumatic stress disorder and seeking Xanax, is not similarly situated to inmates suffering from opioid withdrawal and seeking Suboxone. Mr. Talbert also alleges the prison psychiatrists'

18

reasonable explanation for not prescribing Xanax.[127] Mr. Talbert's apples-to-oranges comparison fails the second prong of the equal protection analysis, as does his claim.

**D.    Mr. Talbert sufficiently pleads Drs. Patel's and Schneider's deliberate indifference claims but fails to plead breach of contract.**

Mr. Talbert alleges Drs. Patel and Schneider violated prison policy when they "disregarded [his needle phobia] and refused to send [him] offsite to an oral specialist that used anesthesia upon patients afraid of needles."[128] Mr. Talbert alleges Drs. Patel and Schneider's conduct violated Prison Policy Number 4.E.5, which allegedly provides: "[t]he services of specialized healthcare providers in the community will be available when an inmates [sic] illness has been determined to require those services."[129]

Mr. Talbert also alleges Drs. Patel and Schneider "failed to foster to [Mr. Talbert] effective and timely care as required by accepted standards of dental practice."[130] Mr. Talbert cites 28 Pa. Code § 141.11 Facilities and Equipment, allegedly providing: "Facilities and supplies for the dental service shall be such as to foster effective and timely patient care. . . . Equipment, instruments and supplies in the dental service shall be of the same high quality as is required by generally accepted standards of dental practice."[131] Mr. Talbert also cites 49 Pa. Code § 33.211 allegedly providing: "it will be deemed to be unprofessional conduct when a dentist: (3) delegates to a person duties that the dentist knows or has reason to know the person is not competent to perform or not authorized to perform; (4) withdraws dental services after a dentist-patient relationship has been established so that the patient is unable to obtain necessary dental care in a timely manner; (5) verbally abusing a patient; (7) failing to follow current infection-control recommendations issued by the Federal Centers for Disease Control; and (8) failing to provide necessary dental care to a patient in a timely manner or to apprise (inform) the patient of the need for the care."[132] Mr. Talbert finally cites Dental Law 63 P.S. § 123.1(a)(8) which authorizes the

19

State Board of Dentistry to revoke, refuse, or suspend a dentist's license for engaging in "unprofessional conduct."[133] For purposes of § 123.1(a)(8), "unprofessional conduct" includes "any departure from, or failure to conform to, the standards of acceptable and prevailing dental or dental hygiene practice, practice under a restricted faculty license and standard of care for expanded function dental assistants in which proceeding actual injury to the patient need not be established."[134]

As these claims similarly amount to claims of professional negligence and medical malpractice, we analyze Mr. Talbert's claims against Drs. Patel and Schneider under breach of contract and deliberate indifference standards because Mr. Talbert judicially admitted he does not assert negligence or medical malpractice. Mr. Talbert fails to plead a cause of action under breach of contract but sufficiently pleads deliberate indifference against the prison dentists.

### a. Mr. Talbert fails to plead breach of contract.

Mr. Talbert alleges Drs. Patel and Schneider violated prison policy by disregarding his phobia of needles and refusing to send him to an off-site oral specialist who used general anesthesia on their patients.[135] Mr. Talbert's disagreement with Drs. Patel and Schneider allegedly caused Mr. Talbert pain and suffering for about a year because he would not accept treatment involving needles in his mouth and Drs. Patel and Schneider allegedly would not consider a course of treatment using general anesthesia.[136] Mr. Talbert also alleges prison dentists violated the Pennsylvania Administrative Code. Mr. Talbert plead his prison policy and Pennsylvania state statute claims as breach of contract claims against the prison psychiatrists and prison nurses.[137] We construe Mr. Talbert seeks remedies for breach of contract as he uses the same legal argument against the prison psychiatrists and prison nurses.

20

Mr. Talbert must allege three elements to state a claim for breach of contract: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages.[138] Absent a clear intent of the parties to give a handbook contractual force, Pennsylvania courts generally do not recognize handbooks as contracts.[139] This is particularly true in the prison context where an inmate cannot "accept an offer from the [State Correctional Institution]" or reach a "'meeting of the minds' upon the terms of the handbook."[140]

Drs. Patel and Schneider contend Mr. Talbert alleges facts supporting neither the existence of a contract nor a breach.[141] Drs. Patel and Schneider argue Prison Policy Number 4.E.5 is not an express contract which bound them as the policy does not include express intent to be bound by its terms, nothing in the policy identifies definite terms associated with alleged parties involved, and Mr. Talbert does not allege consideration.[142]

We are again persuaded by Judge Lenihan's analysis in *Brightwell v. Lehman* where Judge Lenihan concluded a prison handbook does not constitute a contract as a matter of law.[143] But Mr. Talbert's breach of contract claim also fails because he did not allege the existence of a contract with essential terms and consideration, a breach of a contractual duty by either Drs. Patel or Schneider, nor plead prison policy terms giving the policy contractual force. Mr. Talbert fails the first required element in a breach of contract claims: the existence of a contract including its essential terms. We dismiss Mr. Talbert's breach of contract claim with prejudice against Drs. Patel and Schneider.

### b. Mr. Talbert sufficiently pleads deliberate indifference to a serious medical need against Drs. Patel and Schneider.

As Mr. Talbert admits he is not claiming negligence or medical malpractice,[144] we understand Mr. Talbert to claim Drs. Patel and Schneider's deliberate indifference to his serious medical need. Resulting from Drs. Patel and Schneider's alleged deliberate indifference, Mr.

21

Talbert suffered adverse impact on his health, unnecessary pain and discomfort in his teeth, difficulty eating and chewing, and anxiety.[145]

Mr. Talbert alleges Drs. Patel and Schneider's knowledge of his phobia through Mr. Talbert's numerous sick call requests and visits to the prison dental clinic.[146] Mr. Talbert alleges Drs. Patel and Schneider did not consider his phobia when formulating his "treatment plan, which ultimately caused [his] conditions to go untreated."[147] Mr. Talbert alleges Drs. Patel and Schneider failed to render treatment "in a manner in accordance" with prevailing standards of the dental community, failed to use proper diagnostic procedures, failed to consult with Mr. Talbert concerning "his phobia and alternative care and treatment plans," failed to properly evaluate his dental records, and failed to consult with an oral surgeon.[148]

For a claim of deliberate indifference to survive a motion to dismiss, our Court of Appeals requires an inmate plead "(1) . . . the defendants were deliberately indifferent to their medical needs and (2) . . . those needs were serious."[149] Deliberate indifference requires "obduracy or wantonness," or conduct including a "recklessness or a conscious disregard of a serious risk" to inmate health and safety.[150] A medical need is serious if it is "diagnosed by a physician as requiring treatment or one . . . so obvious . . . a lay person would easily recognize the necessity for a doctor's attention."[151] "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment."[152]

We must follow our Court of Appeals' analysis in *Talbert v. Correctional Dental Associates*.[153] In a nearly identical case, Mr. Talbert suffered an infected tooth.[154] Citing his phobia of needles in his mouth, Mr. Talbert "requested offsite oral surgery under general anesthesia in order to extract [the infected] tooth."[155] Prison dentists "denied the requests, but offered to extract the tooth with a local anesthetic (which would, of course, require placing a needle

22

in [Mr.] Talbert's mouth). [Mr.] Talbert refused that line of treatment and continued to request a referral for oral surgery under general anesthesia."[156] Mr. Talbert alleged prison dentists used no "professional judgment" in developing his treatment plan.[157]

Our Court of Appeals determined Mr. Talbert's "need to have a tooth extracted due to an infection is a serious medical need."[158] But our Court of Appeals focused on Mr. Talbert's alleged "crippling fear of needles in his mouth,"[159] and in finding Mr. Talbert sufficiently alleged deliberate indifference by the prison dentist defendants, it held his phobia "may well constitute a serious medical need [as well]" and "if true — is, in any event, a factor . . . treating officials must consider and confront in discharging their constitutional duty to provide medical care."[160] "This case is not just about [Mr. Talbert] requesting off-site oral surgery under general anesthesia for comfort . . . [Mr.] Talbert's claim as we understand it, is . . . the defendants did not sufficiently grapple with his crippling fear of needles."[161]

In finding Mr. Talbert's phobia to be a factor prison dentists should have considered in planning to treat Mr. Talbert, our Court of Appeals relied on *Richmond v. Huq*.[162] In *Richmond*, an inmate sued her prison alleging Eighth Amendment violations for cruel and unusual punishment for poor mental health care she received from prison psychiatrists.[163] At the commencement of her incarceration, Ms. Richmond received a diagnosis for bipolar disorder which required medication.[164] Despite their knowledge bipolar disorder symptoms are likely to return within ten to fourteen days without proper medication, prison psychiatrists decided not to prescribe Ms. Richmond's medication and scheduled her follow up psychiatric appointment for seventeen days later.[165] Ms. Richmond suffered without her medication until three days after the follow up, when a prison psychiatrist filled the prescription.[166] The Court of Appeals for the Sixth Circuit determined withholding Ms. Richmond's medication for this extended period to constitute

23

deliberate indifference to a serious medical need and held "an inmate has a right to be free from deliberate indifference to his or her serious psychological needs."[167]

Relying on *Roe v. Elyea*,[168] our Court of Appeals concluded a medical professional must not depart from accepted standards of professional judgment when making treatment decisions regarding Mr. Talbert.[169] "[W]hen a medical professional fails to 'to consider an individual inmate's condition in making treatment decisions . . . [that is] precisely the kind of conduct that constitutes a substantial departure from accepted professional judgment, practice, or standards, [such] as to demonstrate that the person responsible actually did not base the decision on such a judgment."[170] "'[P]rison officials still must make a determination that application of the protocols result in adequate medical care,' to an individual inmate."[171]

In *Elyea*, plaintiff inmates alleged deliberate indifference to their serious medical needs because prison physicians treated their Hepatitis C according to state prison protocol, applied to all state inmates, instead of according to the plaintiff inmate's individualized needs.[172] "[I]n order to establish a consistent treatment plan [covering] all inmates, the [Illinois Department of Corrections decided] to limit follow-up testing and treatment to those individuals who could complete a course of treatment while still incarcerated."[173] But upon conclusion of the standard forty-eight week treatment plan, the Illinois Department of Corrections "would not consider further testing, biopsy or therapy unless an inmate had *at least* eighteen months remaining in his sentence."[174] This standard treatment plan failed Mr. Roe, an inmate with Hepatitis C who prison doctors misdiagnosed for tuberculosis.[175] Seven months from Mr. Roe's release date further tests revealed the misdiagnosis, but at this point Mr. Roe did not qualify for Hepatitis C treatment under the state's protocol.[176] During his incarceration, Mr. Roe did not receive treatment for Hepatitis C, such as antiviral therapy or a biopsy, because both are considered dangerous to patients with

24

tuberculosis.[177] Mr. Roe's conditions worsened from lack of treatment.[178] The court of appeals affirmed the district court. It held individualized care is required for inmate treatment under the deliberate indifference standard.[179]

As did our Court of Appeals in his earlier case, we must find Mr. Talbert sufficiently plead Drs. Patel and Schneider's deliberate indifference to his serious medical need at the motion to dismiss stage. Mr. Talbert alleges his cavities and broken, infected, and decayed teeth which constitute a serious medical need.[180] Mr. Talbert alleges the prison dentists knew about his needle phobia. Mr. Talbert alleges prison dentists failed to "consider and confront" his alleged phobia when formulating his treatment plan. This alleged failure may show the prison dentists acted without exercising professional judgment, as found insufficient by our Court of Appeals. We recognize Mr. Talbert does not have a constitutional right to a "referral for off-site oral surgery under general anesthesia," but "if [Mr. Talbert's] fear was an objective medical need, or an actual phobia, it should have factored into the treatment plan."[181] We deny dismissal of Mr. Talbert's deliberate indifference claim against Drs. Patel and Schneider.

## III. Conclusion

We grant Drs. Reynolds, Fowler, Taylor, and Lisco's motion to dismiss. We dismiss Mr. Talbert's claims against the prison psychiatrists for breach of prison policy, Pennsylvania state statute, First Amendment retaliation, and equal protection.

We grant Drs. Patel and Schneider's partial motion to dismiss Mr. Talbert's breach of contract claims. We deny Drs. Patel and Schneider's partial motion to dismiss Mr. Talbert's deliberate indifference claims.

---

[1] "Despite Iqbal's heightened pleading requirements, the district court must be more flexible in its interpretation of *pro se* pleadings." *Boyer v. Mohring*, 994 F. Supp. 2d 649, 654 (E.D. Pa. 2014); *see Higgs v. Attorney General of the United States*, 655 F.3d 333, 339 (3d Cir. 2011), *as*

*amended* (September 19, 2011) ("[W]hen presented with a *pro se* litigant, we 'have a special obligation to construe his complaint liberally.'" (quoting *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999))).

[2] ECF Doc. No. 73 at ¶¶ 67-68.

[3] *Id.* at ¶¶ 69, 76.

[4] *Id.* at ¶ 77.

[5] *Id.* at ¶ 83.

[6] *Id.* at ¶ 94.

[7] *Id.* at ¶ 70.

[8] *Id.* at ¶ 71.

[9] *Id.*

[10] *Id.* at ¶ 72.

[11] *Id.* at ¶ 73.

[12] *Id.* at ¶ 74.

[13] *Id.* at ¶ 75.

[14] *Id.*

[15] *Id.*

[16] *Id.* at ¶¶ 85-100.

[17] *Id.* at ¶ 9.

[18] *Id.* at ¶¶ 10-11.

[19] *Id.* at ¶ 2.

[20] *Id.* at ¶ 10. Mr. Talbert seems to allege entitlement to offsite dental care from a dentist who uses general anesthesia administered in gas form instead of a local anesthetic which numbs the mouth but the patient stays awake during the operation.

[21] *Id.* at ¶ 11.

[22] *Id.* at ¶ 12.

[23] *Id.* at ¶ 15.

[24] *Id.*

[25] *Id.* at ¶¶ 12-14.

[26] ECF Doc. No. 73 at ¶¶ 8-35.

[27] ECF Doc. No. 137. When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiffs complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corporation*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[28] ECF Doc. No. 166.

[29] *Id.*

[30] ECF Doc. Nos. 87, 97.

[31] Pa.R.Civ.P. 1042.3.

[32] ECF Doc. No. 95 at 2-3.

[33] *Id.*

[34] ECF Doc. No. 99.

[35] ECF Doc. No. 98 at 2-3.

[36] ECF Doc. No. 73 at ¶ 87.

[37] *Id.* at ¶ 86.

[38] *Id.* at ¶ 91.

[39] *Id.* at ¶ 90.

[40] ECF Doc. No. 99.

[41] Samantha Melamed, *Pennsylvania prison suicides are at an all-time high. Families blame 'reprehensible' mental-health care*, PHILADELPHIA INQUIRER, Feb. 20, 2020, https://www.inquirer.com/news/graterford-prison-suicide-pennsylvania-lawsuits-correct-care-solutions-mhm-20200220.html.

[42] For example, on April 5, 2019, we identified at least fifty-four lawsuits filed by Mr. Talbert *pro se*. *See Talbert v. Johnson*, No. 19-1341, 2019 WL 1516940, at *3 (E.D. Pa. Apr. 5, 2019).

[43] ECF Doc. No. 73 at ¶ 87.

[44] *Id.* at ¶ 54. In our order partially granting and partially denying Defendants Shellenberger's and Horne's motion to dismiss, we interpreted Counts One and Two against those defendants as one breach of contract claim. ECF Doc. No. 109.

[45] *Alpart v. General Land Partners, Inc.*, 574 F. Supp. 2d 491, 502 (E.D. Pa. 2008) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

[46] *Sharp v. Whitman Council, Inc.*, No. 05-4297, 2007 WL 2874058, at *3 (E.D. Pa. Oct. 1, 2007); *Tran v. State System of Higher Education*, 986 A.2d 179, 183 (Pa. Commw. Ct. 2009) (discussing student handbook); *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214-15 (Pa. Super. Ct. 1997) (discussing employer handbook).

[47] *Oatess v. Beard*, 576 A.2d 398, 400 (Pa. Super. Ct. 1990).

[48] *Brightwell v. Lehman*, No. 03-205, 2006 WL 931702 (W.D. Pa. April 10, 2006).

[49] *Id.* at *2.

[50] *Id.* at *7.

[51] ECF Doc. No. 95 at 2-3.

[52] A pretrial detainee's claim for inadequate medical care arises under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *Natale v. Camden Cnty. Corr. Fac.*, 318 F.3d 575, 581-82 (3d Cir. 2003).

[53] *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983) (holding Due Process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner"); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (finding "[a]cts or

omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" violate the Eighth Amendment right to be free from cruel and unusual punishment).

[54] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013).

[55] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[56] *Edwards v. Northampton County*, 663 F. App'x 132, 137 (3d Cir. 2016); *see Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation.").

[57] *Spruill*, 372 F.3d at 235 (citing *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

[58] *Allah v. Thomas*, 679 Fed. App'x 2016, 219 (3d Cir. 2017).

[59] *Rouse*, 182 F.3d at 197.

[60] *Id.* (quoting *White v. Napoleon*, 897 F.2d 103, 109-11 (3d Cir. 1990)). We recognize courts originally applied this standard to Eighth Amendment violations of prisoners, but our Court of Appeals instructs this standard also applies to a pretrial detainee's claims for inadequate medical treatment in violation of the Fourteenth Amendment. *See Edwards*, 663 F. App'x at 135.

[61] *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal citations omitted).

[62] *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

[63] ECF Doc. No. 83 at 3.

[64] *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). This case discusses the standard for summary judgment under Federal Rule of Civil Procedure 56. The issue before us arises under Rule 12(6)(b).

[65] ECF Doc. No. 83 at 3.

[66] *Richmond v. Huq*, 855 F.3d 928, 934 (6th Cir. 2018).

[67] ECF Doc. No. 83 at 4.

[68] *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996).

[69] ECF Doc. No. 83 at 4.

[70] *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

[71] ECF Doc. No. 83 at 4.

[72] *Id.*

[73] *Norris v. Frame*, 585 F.2d 1183, 1188-89 (3d Cir. 1978).

[74] ECF Doc. No. 73 at ¶ 68.

[75] *Id.* at ¶ 69.

[76] *Id.* at ¶ 87.

[77] ECF Doc. No. 137 at 10.

[78] *Id.* at 11.

[79] *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 290 (D.N.J. 1998) ("Prescribing medication that may have side effects does not amount to "deliberate indifference" to serious medical needs as is necessary to support a claim under *Estelle*.").

[80] *Bryant v. Kaskie*, 744 F. App'x 39, 41 (3d Cir. 2018).

[81] *Id.* at 42.

[82] *Id.*

[83] *Id.*

[84] ECF Doc. No. 73 at ¶ 77.

[85] *Id.* at ¶ 71.

[86] *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

[87] *Id.* (internal citations omitted).

[88] ECF Doc. No. 73 at ¶ 87.

[89] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[90] *Id.* (quoting *White v. Napolean*, 897 F.2d 103, 109-11 (3d Cir. 1990)). We recognize courts originally applied this standard to Eighth Amendment violations of prisoners, but our Court of Appeals instructs this standard also applies to a pretrial detainee's claims for inadequate medical treatment in violation of the Fourteenth Amendment. *See Edwards v. Northampton County*, 663 F. App'x 132, 135 (3d Cir. 2016).

[91] ECF Doc. No. 73 at ¶ 77.

[92] *Id.* at ¶ 73.

[93] *Id.* at ¶ 87.

[94] *Id.* at ¶ 79.

[95] *Id.* at ¶ 87.

[96] *Id.* at ¶ 83.

[97] *Id.* at ¶ 77.

[98] ECF Doc. No. 73 at ¶ 94.

[99] *Id.* at ¶ 95.

[100] *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citation and internal quotation marks omitted).

[101] *DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010).

[102] *See, e.g., Kelly v. York County Prison*, 340 Fed. Appx. 59, 61 (3d Cir. 2009) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). *See also Morales v. Berks County Prison*, No. 10-5117, 2011 WL 2746077, at *5 (E.D. Pa. July 14, 2011) (same).

[103] *Mitchell*, 318 F.3d at 528, 536.

[104] *Id.* at 527, 530.

[105] *Id.* at 530 (citing *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (holding a prisoner stated a retaliation claim when he alleged a prison official confined him in administrative segregation to punish him for making civil rights complaints).

[106] *Id.*

[107] *Id.*

[108] ECF Doc. 73 at ¶¶ 94, 95; *see also Miskovitch v. Hostoffer*, 721 F. Supp. 2d 389, 396 (W.D. Pa. 2010) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981) ("A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim.").

[109] *Id.* at ¶ 95.

[110] *Id.*

[111] *Id.* at ¶ 83.

[112] *Id.* at ¶¶ 71, 75.

[113] *Id.* at ¶ 77.

[114] *Id.* at ¶ 82.

[115] Mr. Talbert alleges violations of the due process clause and Title VII of the Civil Rights Act of 1964, in addition to violations of the equal protection clause. To establish a due process claim, Mr. Talbert must plead a constitutionally protected liberty or property interest and constitutionally deficient procedures in deprivation of that interest. *Board of Regents v. Roth*, 408 U.S. 564 (1972). He does not, so his due process claim fails. Title VII of the Civil Rights Act forbids discrimination in employment. This claim fails because Mr. Talbert's allegations do not relate to employment discrimination.

[116] ECF Doc. 73 at ¶ 99.

[117] *Id.* at ¶ 80.

[118] *Id.* at ¶ 82.

[119] *Id.* at ¶¶ 77-78.

[120] *Id.* at ¶ 80.

[121] U.S. CONST. amend. XIV, § 1.

[122] *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)).

[123] *Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d 682, 693 (E.D. Pa. 2015), *aff'd sum nom A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125 (3d Cir. 2016) (quoting *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002)).

[124] ECF Doc. No. 137 at 10; *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

[125] *Olech*, 528 U.S. at 564.

[126] ECF Doc. No. 73 at ¶¶ 79, 82.

[127] *Id.* at ¶ 77.

[128] *Id.* at ¶¶ 18-19.

[129] *Id.* at ¶ 17.

[130] *Id.* at ¶ 23.

[131] *Id.* at ¶ 22.

[132] *Id.* at ¶ 24.

[133] *Id.*

[134] 63 P.S. § 123.1(a)(8).

[135] ECF Doc. No. 73 at ¶¶ 18-19.

[136] *Id.* at ¶¶ 12, 19-20.

[137] ECF Doc. No. 73 at ¶ 54. In our order partially granting and partially denying Defendants Shellenberger's and Horne's motion to dismiss, we interpreted Counts One and Two against those defendants as one breach of contract claim. ECF Doc. No. 109.

[138] *Alpart v. General Land Partners, Inc.*, 574 F. Supp. 2d 491, 502 (E.D. Pa. 2008) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

[139] *Sharp v. Whitman Council, Inc.*, No. 05-4297, 2007 WL 2874058, at *3 (E.D. Pa. October 1, 2007); *Tran v. State System of Higher Education*, 986 A.2d 179, 183 (Pa. Commw. Ct. 2009) (discussing student handbook); *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214-15 (Pa. Super. Ct. 1997) (discussing employer handbook).

[140] *Oatess v. Beard*, 576 A.2d 398, 400 (Pa. Super. Ct. 1990).

[141] ECF Doc. No. 166-2 at 6.

[142] *Id.*

[143] *Brightwell v. Lehman*, No. 03-205, 2006 WL 931702, at *7 (W.D. Pa. April 10, 2006).

[144] ECF Doc. No. 95 at 2-3.

[145] ECF Doc. No. 73 at ¶ 14.

[146] *Id.* at ¶¶ 10-11.

[147] *Id.* at ¶ 12.

[148] *Id.* at ¶ 13.

[149] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013).

[150] *Talbert v. Correctional Dental Associates*, 731 F. App'x 145, 150 (3d Cir. 2018) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

[151] *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citing *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)).

[152] *Id.*

[153] *Talbert*, 731 F. App'x at 150.

[154] *Id.* at 147.

[155] *Id.*

[156] *Id.*

[157] *Id.* at 151.

[158] *Id.* at 150 (citing *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

[159] *Id.*

[160] *Id.* (citing *Richmond v. Huq*, 872 F.3d 355, 368 (6th Cir. 2017) (explaining "an inmate has a right to be free from deliberate indifference to his or her serious psychological needs"); *Monmouth County Correctional Institutional Inmates*, 834 F.2d at 347 (explaining providing adequate medical care requires individualized treatment).

[161] *Talbert*, 731 F. App'x at 150.

[162] *Richmond v. Huq*, 872 F.3d 355 (6th Cir. 2017).

[163] *Id.* at 363.

[164] *Id.* at 368.

[165] *Id.*

[166] *Id.*

[167] *Id.*

168 *Roe v. Elyea*, 631 F.3d 843, 860 (7th Cir. 2011).

169 *Talbert v. Correctional Dental Associates*, 731 F. App'x 145, 150 (3d Cir. 2018) (citing *Roe v. Elyea*, 631 F.3d 843, 860 (7th Cir. 2011).

170 *Id.*

171 *Id.* at 150-51 (citing *Roe v. Elyea*, 631 F.3d 843, 860 (7th Cir. 2011)).

172 *Elyea*, 631 F.3d at 847, 850-53.

173 *Id.* at 850.

174 *Id.*

175 *Id.* at 851.

176 *Id.*

177 *Id.*

178 *Id.*

179 *Id.* at 859-860.

180 *See Talbert v. Correctional Dental Associates*, 731 F. App'x 145, 150 (3d Cir. 2018) (determining Mr. Talbert's infected tooth requiring extraction to indisputably be a serious medical need).

181 *Id.* at 151.