**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES TALBERT** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  18-5112** |
| | : | |
| **CORRECTIONAL DENTAL** | : | |
| **ASSOCIATES,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                 **January 14, 2021**

Charles Talbert spent many years in and out of county and state correctional facilities.  We found him to be a serial litigant after we reviewed summary dismissals of several *pro se* cases challenging state actors for a variety of perceived constitutional violations.  He has demonstrated a repeated concern with his dental care in varying facilities. Our Court of Appeals directed further examination of his phobia of needles relating to his dental care in a 2018 opinion. Mr. Talbert is now suing another dentist at another facility for failing to properly treat his dental needs and retaliating against him. He adduces specific evidence of his dental needs and of potential retaliation. He does not adduce evidence of an equal protection violation. Following extended discovery, the evidence confirms the fact finder must resolve Mr. Talbert's deliberate indifference and retaliation claims but there is no genuine issue of material fact and judgment is warranted as a matter of law in favor of the dentist on Mr. Talbert's equal protection claim.

## I.      Adduced Facts.[1]

Mr. Talbert has spent many months in different county and state correctional facilities.  He exercises his rights to sue state actors when he feels aggrieved.  He brought this case for a variety of medical issues but has now limited his claim to deliberate indifference to his dental needs and retaliation against him.

*Mr. Talbert's 2015 offsite dental treatment.*

Dr. Lepley, a dentist at the Philadelphia Industrial Correction Center, sent Mr. Talbert offsite to the Pennsylvania Oral Surgery & Dental Implant Center on May 18, 2015 for extraction of three non-restorable teeth under general anesthesia.[2]  The patient referral notes from over five years ago confirm Dr. Lepley referred Mr. Talbert for offsite treatment because Mr. Talbert reported a fear of needles.[3]  He returned to the offsite dental center for a follow-up appointment on June 1, 2015 and received treatment for an acute infection.[4]  The patient referral portal does not show other instances of patients being referred offsite for dental care or patients being referred offsite due to a phobia or other mental health consideration.[5]

A few weeks after the offsite treatment, Mr. Talbert sued Correctional Dental and several of its agents, alleging he had been experiencing issues with his teeth since May 2014 and required offsite treatment under general anesthesia due to his fear of needles, but the dentists refused to refer him for offsite treatment for an entire year.[6] Mr. Talbert eventually settled his claims against Correctional Dental and its agents[7] and released them from liability for causes of actions accrued as of the date of the release, November 6, 2015.[8]

*Mr. Talbert's 2016 dental treatment and subsequent lawsuit.*

Mr. Talbert sued Correctional Dental Associates and its agents again in May 2016 asserting claims for deliberate indifference and for violating his equal protection rights.[9]  Mr. Talbert alleged he asked to be referred offsite for another extraction of an infected tooth on October 9, 2015, and Correctional Dental agents told Mr. Talbert they would not send him offsite because they could perform the extraction onsite by administering a local anesthetic.[10] The dentists moved for summary judgment on Mr. Talbert's claims, arguing the November 6, 2015 release covered Mr. Talbert's claims, and Mr. Talbert failed to adduce sufficient evidence of deliberate indifference.[11]

We agreed with the dentists and granted their motion for summary judgment.[12] Our Court of Appeals disagreed, finding "if Talbert's fear was an objective medical need, or an actual phobia, it should have factored into his treatment plan," and his treatment plan "should have been based on 'professional judgment'" and Mr. Talbert's individual needs, rather than a "generally applied protocol."[13] The Court of Appeals held, "[w]e are unable to determine if judgment was appropriate as to Talbert's claim since the record is undeveloped as to the interplay of his dental needs and his fear of needles."[14] The Court remanded, and the parties settled their claims.[15]

*Mr. Talbert's 2019 dental treatment.*

Mr. Talbert's dental woes continued after he settled his 2015 and 2016 cases. On January 11, 2019, Mr. Talbert visited the prison dental clinic.[16] According to Dr. Schneider's report, she asked Mr. Talbert if he had been experiencing issues with any of his teeth.[17] Mr. Talbert stated he was having problems with "all of them."[18] Dr. Schneider asked Mr. Talbert to "pick an area to start with," and Mr. Talbert became agitated, saying "this is unconstitutional" and telling Dr. Schneider "you need to learn how to do your job."[19] Dr. Schneider asked Mr. Talbert to leave, and Mr. Talbert responded "F*ck you and see you in court" and added "this is why I have so many cases against you stupid mother f*ckers."[20]

Less than two weeks later on January 22, 2019, Mr. Talbert sought dental treatment again.[21] Dr. Schneider determined one of Mr. Talbert's teeth could not be restored and should be extracted.[22] Mr. Talbert told Dr. Schneider he was "afraid of needles" and requested to be sent offsite for the procedure.[23] Dr. Schneider explained the prison dentists could perform the extraction onsite and asked whether he wanted to schedule the onsite extraction.[24] Mr. Talbert said he did not want to schedule the extraction, refused to sign a refusal of treatment form, and left.[25]

3

But he returned to the dental clinic a few weeks later.[26]  While waiting for the doctor, Mr. Talbert began saying the dental staff conspired against him and then walked out of the clinic without receiving treatment.[27]  Mr. Talbert returned to the dental clinic the following week.[28]  Dr. Schneider reported Mr. Talbert "was argumentative" in this return visit before he sat down in the dental chair.[29]  Mr. Talbert again expressed his belief the dentists conspired against him and asked Dr. Schneider to send him offsite for dental treatment.[30]  Dr. Schneider told Mr. Talbert the dentists could perform the procedures he needed onsite.[31]  He explained he wanted to go offsite due to his fear of needles, and Dr. Schneider reiterated they could perform the extraction onsite.[32]  Mr. Talbert got up to leave and asked Dr. Schneider for her name.[33]  Dr. Schneider told him her name, and Mr. Talbert said Dr. Schneider was "already on [his] lawsuit" and left.[34]

Mr. Talbert returned to the dental clinic a couple weeks later.[35]  He argued upon arrival with the Dental Assistant Nilda Ruiz about whether they would send him offsite for treatment.[36]  Dental Assistant Ruiz eventually told Mr. Talbert to leave; when he would not, a prison official escorted him out of the clinic.[37]  Mr. Talbert told Dental Assistant Ruiz he would "see [her] in court."[38]  Dental Assistant Ruiz called Lieutenant Medina and Deputy Warden Beaufort to report the incident.[39]

Mr. Talbert returned for dental treatment about a month later on April 16, 2019.[40]  When Dental Assistant Ruiz asked what they could do for him, he ignored her, telling Officer Lockhart he would not answer her because she is "so rude."[41]  Mr. Talbert began telling Dr. Patel about his lawsuit against Correctional Dental Associates.[42]  Dental Assistant Ruiz told Mr. Talbert she and Dr. Patel did not need to hear about the lawsuit, and Mr. Talbert should leave if had come to the dentist solely to discuss his lawsuit.[43]  Mr. Talbert became agitated and officers escorted him out of the dental clinic.[44]  Two weeks later, Mr. Talbert again returned to the dental clinic.[45]  Dr. Patel

prescribed Amoxicillin and Ibuprofen.[46]  Mr. Talbert again refused an extraction.[47] Mr. Talbert had an appointment at the dental clinic on June 5, 2019 to see Dr. Epstein, but Mr. Talbert refused to attend.[48]  The same thing happened a week later on June 12, 2019.[49]

Mr. Talbert came to the dental clinic again three months later on September 18, 2019 asking again to be sent offsite for an extraction.[50]  Mr. Talbert explained to Dr. Schneider he had a "phobia of needles."[51]  Dr. Schneider explained the dentists do not send inmates offsite for procedures they can perform in the prison.[52]  Mr. Talbert told Dr. Schneider the dentists were "denying him treatment," and she offered to do the extractions he needed at the dental clinic.[53]  Mr. Talbert left the clinic.[54]  He returned about two weeks later, on October 3, 2019, and asked Dr. Schneider to x-ray his entire mouth.[55]  Dr. Schneider offered to take x-rays of two specific areas of his mouth, and Mr. Talbert repeated he wanted his entire mouth x-rayed.[56]  Mr. Talbert became increasingly agitated until an officer again escorted him out of the clinic.[57]

Nearly two months elapsed before Mr. Talbert's next visit to the dental clinic on November 20, 2019.[58]  Prison officers escorted Mr. Talbert to the dental clinic after he initially refused to go with officers.[59]  He again asked Dr. Schneider to refer him for offsite treatment, or alternatively, administer general anesthesia to perform the extractions at the prison.[60]  And Dr. Schneider again told him they could not refer him offsite, nor could they administer general anesthesia.[61]  Mr. Talbert saw Dr. Schneider at the dental clinic two weeks later on December 5, 2019.[62]  Dr. Schneider performed his annual cleaning and an examination and noted Mr. Talbert had developed an abscess.[63]  She prescribed Mr. Talbert Amoxicillin, and noted Mr. Talbert required an extraction.[64]  She did not prescribe pain medication because the medical staff had already prescribed it to Mr. Talbert for an unrelated medical issue.[65]  Mr. Talbert scheduled an extraction

appointment for December 17, 2019.[66]  Correctional Dentists brought in an oral surgeon to see him but Mr. Talbert refused to attend his appointment.[67]

### Mr. Talbert's present case against Dr. Schneider.

Mr. Talbert sued Dr. Schneider in this case seeking damages for:  (1) violating  prison policy; (2) violating the Pennsylvania Health Care Facilities Act and Dental Law; (3) First Amendment Retaliation; and (4) violating his right to equal protection.[68]  Dr. Schneider moved to dismiss Mr. Talbert's claims for violation of prison policy and the Pennsylvania Health Care Facilities Act and Dental Law, but did not move to dismiss Mr. Talbert's constitutional claims.[69] We granted Dr. Schneider's motion in part, and denied in part.  Construing Mr. Talbert's claims for violation of prison policy and Pennsylvania Health Care Facilities Act and Dental Law as claims for breach of contract and deliberate indifference, we granted Dr. Schneider's motion to dismiss the breach of contract claim but denied her motion to dismiss the deliberate indifference claim.[70]

## II.    Analysis

Mr. Talbert and Dr. Schneider now cross-move for summary judgment. [71]  Mr. Talbert argues he established his trypanophobia, his fear of needles, and his dental maladies constituted serious medical needs.[72]  He further argues he established Dr. Schneider exhibited deliberate indifference to those needs by failing to prescribe pain medication and antibiotics, failing to refer him offsite for an extraction under general anesthesia, and failing to order a soft food diet.[73]  In support of his argument he required offsite dental treatment under general anesthesia, he cites an article entitled, "General Anesthesia for Dental Care," which advises using general anesthesia for "patients with severe dental phobia."[74] He argues he established his equal protection and retaliation claims because the record shows Dr. Schneider denied him treatment in retaliation for filing

grievances and lawsuits against Correctional Dental and its agents.[75]  Dr. Schneider opposes Mr. Talbert's motion, arguing Mr. Talbert failed to adduce evidence regarding Dr. Schneider's mental state, which is necessary to establish his deliberate indifference, equal protection, and retaliation claims.[76]

Dr. Schneider moves for summary judgment on Mr. Talbert's deliberate indifference claim, arguing (1) Mr. Talbert has not established Dr. Schneider had "subjective awareness" of a "substantial risk" to his health; and (2) Mr. Talbert cannot survive summary judgment under *Pearson v. Prison Health Services*[77] because he has not proffered expert testimony.[78] Dr. Schneider also moves for summary judgment on Mr. Talbert's retaliation claim, arguing Mr. Talbert failed to establish a causal nexus between his lawsuits and grievances and Dr. Schneider's treatment decisions.[79]  Dr. Schneider moves for summary judgment on the equal protection claim arguing Mr. Talbert failed to adduce evidence of how Dr. Schneider treated similarly situated patients.[80]

We deny Mr. Talbert's motion in its entirety as genuine issues of material fact preclude judgment in his favor.  We grant Dr. Schneider's motion for summary judgment on the equal protection claim but deny her motion on the deliberate indifference and retaliation claims as there are genuine issues of material fact precluding summary judgment on these two remaining claims.

**A.      Genuine issues of material fact require the fact finder resolve the deliberate indifference claim.**

We find a genuine issue of material fact regarding Dr. Schneider's alleged deliberate indifference to Mr. Talbert's serious medical needs.  We deny both parties' motions for summary judgment on this claim.  In reaching this conclusion, we look to our Court of Appeals' decisions in *Talbert v. Correctional Dental Associates* ("*Talbert I*")[81] and *Pearson v. Prison Health Service*.

### *Talbert I*

Mr. Talbert, a serial *pro se* litigant, filed multiple lawsuits related to the dental care he received while incarcerated.  In 2016, Mr. Talbert sued Correctional Dental and several of its agents alleging they violated his Eighth and Fourteenth Amendment rights by refusing to refer him for treatment at an offsite facility, where dentists could administer general anesthesia to treat his dental conditions without triggering his purported phobia of needles.  Correctional Dental and its agents/employees moved for summary judgment on Mr. Talbert's deliberate indifference claim, arguing, among other things, the failure to provide general anesthesia for a tooth removal did not constitute deliberate indifference under the Eighth Amendment, and Mr. Talbert did not adduce sufficient evidence to proceed to a jury on his Fourteenth Amendment claims.  We agreed with Correctional Dental's view of Mr. Talbert's Eighth Amendment claim and granted Correctional Dental's motion.

Our Court of Appeals reversed explaining prison officials violate the Eighth Amendment when they are "deliberately indifferent to a serious medical need."[82]  The Court of Appeals found "[t]here is no dispute that Talbert's need to have a tooth extracted due to an infection is a serious medical need" and further found his alleged "crippling fear of needles in his mouth" might also "constitute a serious medical need."[83]  The Court advised, "if Talbert's fear was an objective medical need, or an actual phobia, it should have factored into his treatment plan," and his treatment plan "should have been based on 'professional judgment'" rather than a "generally applied protocol."[84]  The Court held, "[w]e are unable to determine if judgment was appropriate as to Talbert's claim since the record is undeveloped as to the interplay of his dental needs and his fear of needles."[85]  We must assess whether *Talbert I* requires us to deny Dr. Schneider's motion for summary judgment.

Unlike in *Talbert I*, where the dentists did not dispute whether Mr. Talbert's dental maladies constituted a serious medical needs, Dr. Schneider appears to dispute whether Mr. Talbert has a "serious" medical need.  Dr. Schneider argues Mr. Talbert has not shown his "oral complications presented a substantial, serious risk to his health at all."[86]  She further avers, even if the treatment plan did pose a substantial risk to Mr. Talbert's health, Mr. Talbert has not established Dr. Schneider "possessed subjective awareness of a substantial risk of harm to the prisoner."[87]  We do not find this argument persuasive.  Mr. Talbert adduced evidence his medical needs were serious, and Dr. Schneider knew his needs were serious.  "A medical need is 'serious,' . . . if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[88] Dr. Schneider and Dr. Patel each separately concluded Mr. Talbert's teeth were non-restorable and required extraction.  Dr. Schneider cannot now deny her awareness of Mr. Talbert's condition or his need for treatment.  As far as Mr. Talbert's fear of needles, the record confirms Mr. Talbert told Dr. Schneider about this fear.  Despite the pain Mr. Talbert reported, he refused to allow the dentists to extract his teeth for a full year, consistently citing his fear of needles. His prison dental records further show prison dentists had taken his alleged phobia into account in 2015 when they referred him for an offsite extraction.  A reasonable fact finder could determine Dr. Schneider had notice she should have tweaked Mr. Talbert's dental plan to account for his fear of needles or at least have investigated the legitimacy of his purported phobia.

Like in *Talbert I*, the record here is "undeveloped as to the interplay of [Mr. Talbert's] dental needs and his fear of needles."[89]  Neither Dr. Schneider nor Mr. Talbert offered evidence regarding the legitimacy of Mr. Talbert's needle phobia, and the record contains scant evidence regarding how a reasonable medical professional would typically consider a "needle phobia" in

developing a treatment plan.  Mr. Talbert cites one article, advising dentists to administer general anesthesia when patients exhibit a phobia,[90] but he has not elicited testimony to this effect.  Dr. Schneider has not offered evidence regarding how such a phobia, assuming it constituted a serious medical need, would typically factor into a reasonable medical professional's development of a patient's treatment plan. Consistent with *Talbert I*, we deny Dr. Schneider's and Mr. Talbert's motion for summary judgment on the deliberate indifference claim because there is insufficient evidence in the record regarding the interplay between Mr. Talbert's needle phobia and his dental maladies.  Neither party has shown undisputed evidence.

### *Pearson v. Prison Health Services*

Dr. Schneider argues we should grant her motion for summary judgment because Mr. Talbert fails to offer expert testimony regarding the adequacy of the dental care he received, and thus we must dismiss under *Pearson*.[91]  We disagree.

In *Pearson*, our Court of Appeals decided as a matter of first impression "whether and when medical expert testimony may be necessary to create a triable issue on the subjective prong of a deliberate indifference case."[92]  There, an inmate brought a deliberate indifference claim after prison medical professionals misdiagnosed, and thus failed to timely and appropriately treat, his appendicitis and urethral tear.[93]  In determining what evidence the prisoner needed to adduce to survive summary judgment on his deliberate indifference claim, the Court of Appeals identified three guiding principles.  First, "deliberate indifference is a subjective state of mind that can, like any other form of scienter, be proven through circumstantial evidence and witness testimony."[94]  Second, "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment,'" and "where medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates

10

professional standards of care."[95]  Third, "mere receipt of inadequate care does not itself amount to deliberate indifference—the defendant must also act with the requisite state of mind when providing inadequate care."[96]  Based on these observations, the Court of Appeals held, "medical expert testimony may be necessary to establish deliberate indifference in an adequacy of care claim where, as laymen, the jury would not be in a position to determine that the particular treatment or diagnosis fell below a professional standard of care."[97]  The court continued:

> "[l]ikewise, it makes sense to require a prisoner to offer extrinsic proof regarding the quality of medical care in adequacy of care cases when, to defeat our presumption that the medical care provided to him or her was adequate, the prisoner must show that the medical official did not exercise professional judgment."[98]

Our Court of Appeals nevertheless disagreed with the district court's conclusion Mr. Pearson needed expert testimony.[99]  The court reasoned the district court's holding overlooked *Brightwell v. Lehman*[100] where the court "noted expert testimony 'is not necessarily required' where other forms of extrinsic proof may suffice."[101]  The Court of Appeals found Mr. Pearson could potentially prove the inadequacy of his medical care through other forms of extrinsic proof, like, a training manual, photograph or medical records.[102]  The Court of Appeals further disagreed with the district court's conclusion Mr. Pearson needed to offer extrinsic proof to create a triable issue on all, rather than just some, of Mr. Pearson's deliberate indifference claims.[103]  The court read Mr. Pearson's claims as alleging "two claims that he was delayed or denied treatment outright for a non-medical reason and one adequacy of treatment claim where it would be apparent to a layperson that his medical treatment violated a professional standard of care."[104]  For these claims, "additional extrinsic proof was not necessary to survive summary judgment."[105]

*Pearson* does not require we grant Dr. Schneider's motion for summary judgment.  As an initial matter, our Court of Appeals in *Pearson* instructed  "expert testimony 'is not necessarily required' where other forms of extrinsic proof," including medical records, "may suffice." [106]

Today's record contains Mr. Talbert's dental records, which establish his teeth were non-restorable and required extraction.  While Dr. Schneider frames Mr. Talbert's claims as inadequacy of treatment claims, he is asserting a denial of treatment claim.  There is no dispute Mr. Talbert presented with non-restorable teeth; there is no dispute Mr. Talbert's teeth required extraction; and there is no dispute as to whether Mr. Talbert received the recommended extractions from 2018 to 2019.  Today's dispute is whether Dr. Schneider exhibited deliberate indifference in refusing to send Mr. Talbert for extraction offsite, when she repeatedly offered to extract his teeth onsite, he repeatedly refused treatment, and no medical professional corroborated the existence of his purported "needle phobia."  Because reasonable fact finders could reach different conclusions on this question, we must submit this issue to a fact finder.

### B.    Genuine issues of material fact require the fact finder resolve the retaliation claim.

We deny Dr. Schneider's motion for summary judgment on Mr. Talbert's retaliation claim because Mr. Talbert satisfied his initial burden to establish a *prima facie* claim of retaliation, and Dr. Schneider has not satisfied her burden of adducing undisputed material facts establishing her actions served a legitimate penological interest. We deny Mr. Talbert's motion for summary judgment because reasonable minds could differ as to whether Dr. Schneider retaliated against him for filing lawsuits and grievances against her and her colleagues.

To establish a retaliation claim, a prisoner-plaintiff, like Mr. Talbert, "must prove that the conduct which led to the alleged retaliation was constitutionally protected."[107]  He must then "show that he suffered some 'adverse action' at the hands of the prison officials."[108] Mr. Talbert may establish this element "by demonstrating that the action 'was sufficient to deter a person of ordinary firmness from exercising his constitutional rights."[109]  If Mr. Talbert meets these two criteria, he must prove "a causal link between the exercise of his constitutional rights and the

adverse action taken against him."[110]   Mr. Talbert bears "the initial burden of proving that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" not to send him offsite for dental care.  Mr. Talbert can satisfy this burden by showing:  (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; (2) a pattern of antagonism coupled with timing; or (3) the evidence in the record, as a whole, would lead a trier of fact to infer causation.[111]   If Mr. Talbert satisfies his initial burden, the burden shifts to Dr. Schneider to "prove by a preponderance of the evidence that [she] would have taken the same . . . action . . . for reasons reasonably related to legitimate penological interests" even if Mr. Talbert had not filed a lawsuit or grievance.[112]   In evaluating Dr. Schneider's motion for summary judgment, we must draw all reasonable inferences in favor of Mr. Talbert; and in evaluating Mr. Talbert's motion for summary judgment; we draw all reasonable inferences in favor of Dr. Schneider.[113]

In *Talbert I*, our Court of Appeals held Mr. Talbert stated a retaliation claim by alleging the prison dentists denied his request for offsite dental treatment in retaliation for filing lawsuits against them.[114]   Mr. Talbert today establishes he engaged in a constitutionally protected activity and suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  But this does not end our inquiry.  We must assess whether Mr. Talbert has established his initial burden of proving his constitutionally protected conduct was a "substantial or motivating factor" in Dr. Schneider's decision, and if he has, we must assess whether Dr. Schneider established by a preponderance of the evidence she would have taken the same action for reasons related to legitimate penological interests.

By a slim margin, Mr. Talbert today satisfied his initial burden of showing his lawsuits may have been a "substantial or motivating factor" behind Dr. Schneider's refusal to send him for

offsite care.  There is limited evidence Dr. Schneider knew of Mr. Talbert's lawsuits against Correctional Dental and its agents.  Dr. Schneider swore she observed Mr. Talbert "threaten[] [Correctional Dental Associates] providers and [Department of Corrections] personal [sic] with legal action" during the time period in question.[115]   Mr. Talbert became agitated in first appointment with Dr. Schneider, told Dr. Schneider she was violating his constitutional rights, and said "this is why I have so many cases against you stupid motherf*ckers."[116]   In his next appointment with Dr. Schneider two weeks later, Dr. Schneider told him she would not refer him for offsite treatment.  The temporal proximity between Mr. Talbert discussing his legal action against the prison dental staff and the denial of treatment could lead a reasonable fact finder to believe Mr. Talbert's lawsuits factored into Dr. Schneider's decision not to refer Mr. Talbert offsite. The record also indicates a pattern of antagonism between Mr. Talbert and the dental staff at the prison.  Mr. Talbert would often lash out at and make legal threats against the dental staff, including Dr. Schneider, and the dental staff would frequently have him escorted out of the dental clinic.[117] We are not suggesting the dental clinic did anything more than remove an undisciplined person in their clinic.  We do not know. The reasonable fact finder could determine whether, and to what extent, Mr. Talbert's litigiousness could have colored how the dental clinic associates, including Dr. Schneider, treated him.

We must next assess whether Dr. Schneider established based on undisputed facts she would have taken the same actions for a legitimate penological interest.  While refusing to send a patient offsite for treatment can serve a legitimate penological interest,[118] Dr. Schneider has not met her evidentiary burden.  Although an equal protection, not a retaliation, case, *Francis v. Carroll* offers guidance for the type of evidence prison medical professionals should adduce to satisfy their burden of proving their actions are related to a legitimate penological interest.[119]

In *Francis*, an incarcerated individual brought suit against prison dentists, alleging the dentists violated his rights to equal protection by failing to refer him to an offsite periodontist for treatment of his gum disease.[120]  In granting the dentists' motion for summary judgment, Judge Farnan cited one of the dentist's affidavits, in which she swore "the process of taking an inmate out to see a specialist is not without security risks to the community," and thus the dentists sought to reduce inmate travel, and resultant danger, by providing its dentists with the necessary equipment to treat periodontal disease onsite.[121]  The dentist also swore the majority of inmates in the prison suffered from periodontal disease, making it impracticable to send inmates offsite for periodontal treatment.[122]  Judge Farnan held, "[g]iven the large number of inmates with periodontal disease, it is evident that reducing the number of inmates who travel outside [the prison] for specialist care is rationally related to this legitimate penological interest."[123]

The only pieces of evidence Dr. Schneider offers as to why she did not send Mr. Talbert for offsite treatment are:  (1) her affidavit swearing she believed it was prison policy not to refer patients for offsite treatment when the treatment is available onsite; and (2) her notes saying she provided this same explanation to Mr. Talbert.[124]  Unlike in *Francis*, where the dentist explained why they do not send inmates offsite in an affidavit, Dr. Schneider does not offer any evidence regarding the reasoning behind the policy of treating inmates onsite whenever possible.  Nor does she offer the policy itself, or any other proof of the policy's existence, into evidence.  While the reasons for treating inmates onsite when possible may seem obvious, this does not change the fact Dr. Schneider has the burden to prove these reasons by a preponderance of the evidence.  As she has not provided any evidence regarding the justifications for this policy, we cannot find she has met her burden.

While we find Mr. Talbert has presented enough evidence to defeat Dr. Schneider's motion for summary judgment, he has not presented sufficient evidence to establish retaliation as a matter of law.  Mr. Talbert did not depose Dr. Schneider or her colleagues, but he did serve interrogatories and requests for admission.  In neither his interrogatories nor his requests for admission did Mr. Talbert seek an answer or an admission from Dr. Schneider regarding Mr. Talbert's lawsuits and grievances or how these lawsuits and grievances influenced her decisions.  Dr. Schneider, by contrast, swore under penalty of perjury, "Plaintiff's conduct, filing grievances and lawsuits, and refusal of care did not in any way whatsoever influence the manner in which I treated Plaintiff or otherwise affect his treatment plan(s)."[125] She further swore, "Plaintiff's behaviors did not in any manner affect or otherwise influence my judgment as to whether outpatient referrals were medically appropriate or necessary.[126]  Dr. Schneider has thus put forth at least enough evidence to create a genuine dispute of material fact as to whether Mr. Talbert's lawsuits were a substantial or motivating factor in her decision not to refer him for offsite treatment.  Thus, we deny Mr. Talbert's motion for summary judgment on his retaliation claim.

**C.    We grant Dr. Schneider's and deny Mr. Talbert's motions for summary judgment on the equal protection claim.**

We grant Dr. Schneider's and deny Mr. Talbert's motion for summary judgment on Mr. Talbert's equal protection claim because there is no evidence Dr. Schneider treated Mr. Talbert differently than others similarly situated.

To sustain an equal protection claim, Mr. Talbert must show the dentists "intentionally treated [him] differently from others similarly situated," and "there [was] no rational basis for the difference in treatment."[127] The record includes a printout of a patient referral portal, which shows incidents dating back to 2015 of prison medical professionals referring incarcerated individuals for offsite treatment.  The patient referral portal shows Mr. Talbert is the only individual the prison

dentists have referred for offsite dental treatment in the past five years.[128]   He also appears to be the only individual a medical professional has referred offsite for a procedure due to a phobia or other mental health consideration.[129]   While the record shows the doctors treated Mr. Talbert differently in 2018 and 2019 than they did in 2015, it does not show they treated Mr. Talbert differently than another incarcerated patient.

## III.   Conclusion

We deny Mr. Talbert's motion for summary judgment in its entirety.   We deny Dr. Schneider's motion for summary judgment on Mr. Talbert's deliberate indifference and retaliation claims.   We grant Dr. Schneider's motion on Mr. Talbert's equal protection claims.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of a motion for summary judgment.   Mr. Talbert filed a statement of undisputed facts at ECF Doc. No. 337 with an accompanying list of documents, labeled "Judgment Appendix of Exhibits." The Judgment Appendix of Exhibits did not have any evidentiary material attached or enclosed.   In an effort to avoid confusion and in light of Mr. Talbert's *pro se* status, we issued an order extending Dr. Schneider's deadline to file a motion for summary judgment and instructing Dr. Schneider to respond to Mr. Talbert's latest motion and attach the exhibits identified in his Judgment Appendix of Exhibits to the extent the listed exhibits constituted identifiable and accessible evidentiary material.   ECF Doc. No. 338.   Dr. Schneider filed a statement of undisputed facts at ECF Doc. No. 347 and an appendix at ECF Doc. No. 348, which included the exhibits Mr. Talbert identified to the extent Dr. Schneider could identify them and had the exhibits in her possession. References to the appendix are by ECF document number and the corresponding Bates number, for example, "SS000001."

[2] ECF Doc. No. 348 at SS000036.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] Compl., *Talbert v. Corr. Dental Ass'n*, No. 15-3230 (E.D. Pa. June 8, 2015), ECF Doc. No. 1. We take judicial notice of the existence of publicly filed court documents to clarify the procedural history.   *See Wilson v. Hendricks*, No. 12-7315, 2013 WL 324743 (D.N.J. Jan. 25, 2013).

---

[7] Stipulation of Dismissal with Prejudice, *Talbert v. Corr. Dental Ass'n*, No. 15-3230 (E.D. Pa. Dec. 22, 2015), ECF Doc. No. 17.

[8] Defs.' App. to Mot. for Summ. J. at CDAMSJ00047, *Talbert v. Corr. Dental Assocs.*, No. 16-1408 (E.D. Pa. June 12, 2017), ECF Doc. No. 65-1.

[9] Compl., *Talbert v. Corr. Dental Assocs.*, No. 16-1408 (E.D. Pa. May 5, 2016), ECF. Doc. No. 5.

[10] *Id.* ¶ 12.

[11] Defs.' Mot. for Sum. J., *Talbert v. Corr. Dental Assocs.* at 7-14, 22, No. 16-1408 (E.D. Pa. June 12, 2017), ECF. Doc. No. 65.

[12] *Talbert v. Corr. Dental Assocs.*, No 16-1408, 2017 WL 3255140 (E.D. Pa. July 31, 2017), *vacated in part by*, 731 F. App'x 145 (3d Cir. 2018).

[13] 731 F. App'x at 151.

[14] *Id.*

[15] Stipulation of Voluntary Dismissal, *Talbert v. Corr. Dental Assocs.*, No. 16-1408 (E.D. Pa. June 14, 2018), ECF Doc. No. 99.

[16] ECF Doc. No. SS000008.

[17] *Id.* at SS000009.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at SS000010.

[22] *Id.* at SS000011.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at SS000012.

[27] *Id.*

[28] *Id.* at SS000013.

[29] *Id.* at SS000014.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.* at SS000015.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* at SS000017.

[41] *Id.* at SS000018.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.* at SS000019.

[46] *Id.* at SS000020.

[47] *Id.*

[48] *Id.* at SS000021.

[49] *Id.* at SS000022.

[50] *Id.* at SS000023.

[51] *Id.* at SS000024.

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at SS000025.

[56] *Id.*

[57] *Id.*

[58] *Id.* at SS000026.

[59] *Id.* at SS000027.

[60] *Id.*

[61] *Id.*

[62] *Id.* at SS000028, SS000030.

[63] *Id.* at SS000029-SS000031.

[64] *Id.* at SS000029, SS000031.

[65] *Id.* at SS000029.

[66] *Id.* at SS000032.

[67] *Id.*

[68] ECF Doc. No. 73; ECF Doc. No. 170 at 4.

[69] ECF Doc. No. 170 at 4.

[70] *Id.* at 20-25.

[71] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the

nonmovant." *Pearson*, 850 F.3d at 533-34 (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-23).

[72] ECF Doc. No. 337 at 5-6.

[73] *Id.* at 7.

[74] *Id.* at 6 (citing *General Anesthesia for Dental Care*, Coastal Pediatric Dental & Anesthesia, https://coastalpediatricdental.com/2018/03/14/general-anesthesia-for-dental-care/ (last visited Dec. 9, 2020).

[75] *Id.* at 8.

[76] ECF Doc. No. 341 at 3-4.

[77] 850 F.3d 536 (3d Cir. 2017).

[78] ECF Doc. No. 342-1 at 12-16.

[79] *Id.* at 18-19.

[80] *Id.* at 16-17.

[81] 731 F. App'x 145 (3d Cir. 2018). In his reply to Dr. Schneider's motion for summary judgment, Mr. Talbert argues we should deny Dr. Schneider's motion for summary judgment and grant his motion for summary judgment in light of *Talbert I* and the doctrine of *stare decisis*. The doctrine of *stare decisis* requires us to adhere to "both the reasoning and the result of a case" decided by our Court of Appeals and the Supreme Court of the United States. *Planned Parenthood of Se. Pa. v. Casey*, 947 F.2d 682, 691-92 (3d Cir. 1991), *rev'd in part on other grounds by Casey v. Planned Parenthood of Se. Pa.*, 502 U.S. 1056 (1992). While Mr. Talbert is correct we must follow the rule of law and reasoning articulated in *Talbert I*, we remind Mr. Talbert the evidentiary record here is different than the evidentiary record in *Talbert I*. He can neither prevail on his summary judgment motion nor defeat summary judgment simply by pointing our Court of Appeals' finding other, different dentists failed to meet their evidentiary burden several years ago. He instead must establish Dr. Schneider has failed to meet her evidentiary burden, as articulated in *Talbert I*.

[82] *Talbert I*, 731 Fed. App'x at 149 (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).

[83] *Id.* at 150.

[84] *Id.* at 151.

[85] *Id.*

[86] ECF Doc. No. 342-1 at 12.

[87] *Id.*

[88] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d (3d Cir. 1981)).

[89] *Talbert I*, 731 F. App'x at 152.

[90] *See*, *supra*, note 74.

[91] ECF Doc. No. 342-1 at 14.

[92] 850 F.3d at 535.

[93] *See id.* at 531-33.

[94] *Id.* at 535.

[95] *Id.*

[96] *Id.*

[97] *Id.* at 536.

[98] *Id.*

[99] *Id.*

[100] 637 F.3d 187 (3d Cir. 2011).

[101] *Pearson*, 850 F.3d at 536.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.*

[106] *Pearson*, 850 F.3d at 536.

[107] *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] *Lauren W. ex. Rel. Jean W. v. DeFlaminis*, 480 F. 3d. 259, 267 (3d Cir. 2007).

[112] *Id.* at 334.

[113] *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

[114] *Talbert I*, 731 Fed. App'x at 149.

[115] ECF Doc. No. 348 at SS000001.

[116] *Id.* at SS000009.

[117] *See, e.g., id.* at SS000014.

[118] *Wilson v. Jin*, 698 Fed. App'x 667 (3d Cir. 2017) (affirming dismissal of an equal protection claim against a prison doctor who refused to send an incarcerated individual with a broken arm to an offsite orthopedic specialist due to the inmate's status as a Restricted Housing Unit inmate because the decision was "likely 'reasonably related to legitimate penological interests . . . because of the security risk RHU inmates may pose when being sent to outside specialists in non-emergency situations.")

[119] 659 F. Supp. 2d 619 (D. Del. 2009).

[120] *Id.* at 623-24.

[121] *Id.* at 630.

[122] *Id.* at 623.

[123] *Id.* at 631.

[124] ECF Doc. No. 348 at SS000002 ("[I]t was my understanding that it is DOC policy not to refer patients for outpatient procedures unless it is medically necessary; it was not medically necessary for an Oral and Maxillofacial Surgeon to conduct Plaintiff's extractions.")

[125] *Id.*

[126] *Id.*

[127] *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

[128] ECF Doc. No. 348 at SS000036.

[129] *Id.*